OPINION
{¶ 1} The parties to this action, defendant-appellant, Thomas A. Tonti, and plaintiff-appellee, Marka M. Tonti, now Marka Lyle, were married on September 9, 1988 and have two minor children. The marriage was terminated by decree of divorce on December 10, 1992. Under their shared parenting plan, which was incorporated into the divorce decree, the parties agreed to share parenting time with the children on an approximately equal basis. The plan provided that appellant pay the children's tuition at a private Catholic school. The plan also provided that appellant maintain health insurance coverage for the children and pay the first $800 per year per child of uncovered medical and dental expenses; any additional uncovered medical and/or dental expenses were to be divided between the parties using the percentage of each party's income to total income set forth in the child support worksheet submitted by the parties. In addition, the plan provided that appellant was to pay all work-related child care expenses up to $13,752 per year, with any expenses exceeding the cap to be split by the parties according to their income percentages.
 {¶ 2} The child support worksheet submitted by the parties at the time of their divorce listed appellant's annual gross income as $80,000 and appellee's annual gross income as $30,000. Work-related child care expenses were established at $12,792. The parties agreed to a $14,264 downward deviation of appellant's annual child support guideline obligation of $21,188 based upon the fact that the children lived with appellant approximately 50 percent of the time and that appellant assumed financial responsibility for the expenses outlined above. Appellant was obligated to pay child support of $6,924 per year ($288.50 per month per child for a total of $577 per month).
 {¶ 3} Appellee remarried in 1995 and left the workforce in May 1997.
 {¶ 4} On March 27, 1998, appellee filed a motion to modify child support, asserting that there had been significant changes in the children's schedules and needs and in the parties' respective abilities to care and provide for the children warranting an increase in child support. On September 23, 1998, appellant filed a motion to modify child support, asserting that there had been a significant change in appellee's income warranting a decrease in his child support obligation. On December 6, 1999, appellee filed a motion for attorney fees. In December 1999 and January 2000, the magistrate held a 10-day hearing on the parties' motions to modify child support and on appellee's motion for attorney fees.
 {¶ 5} The magistrate filed a decision on September 18, 2000, which included comprehensive findings of fact and conclusions of law. The magistrate prepared child support worksheets for both 1998 and 1999 and attached an exhibit detailing how she arrived at the figures pertaining to appellant's income.
 {¶ 6} In pertinent part, the magistrate determined that appellee voluntarily left the workforce in May 1997 and imputed income of $45,000 to appellee for both 1998 and 1999, as well as child care expenses and local income taxes for both years. Using the child support worksheets, the magistrate calculated appellee's adjusted gross income for 1998 and 1999 at $44,928 and $42,178, respectively.
 {¶ 7} As for appellant's income, the magistrate determined that appellant was the sole shareholder of four corporations — T Interests and its subsidiaries Southhampton II Apartments, High Style Homes and Tonti Homes. The magistrate further determined that appellant's income was derived from two sources: (1) personal income as reported on his 1040 federal tax returns, which included interest, dividends, Schedule C self-employment income (consisting of management fees received from his corporations and from Thirty-Four Corporation, a business owned by appellant's father) and Schedule E income; and (2) cash flow income from his four corporations. Given the fluctuations in appellant's personal income and the corporations' cash flow income during 1995, 1996, 1997 and 1998, the magistrate determined that it would be appropriate to average those figures rather than base a child support calculation solely on the income and cash flow for 1998. Based upon her calculations using the child support worksheets, the magistrate determined that appellant's adjusted gross income was $216,847 for both years.
 {¶ 8} The magistrate determined that appellant would owe $2,794.67 per month in child support for both children. The magistrate further determined, however, that the worksheet amounts were unjust, inappropriate and not in the best interest of the children, and recommended a downward deviation in the amount of $1,044.67 per month for an adjusted child support award of $1,750 per month, retroactive to March 27, 1998, the date appellee filed her motion to modify child support. The magistrate further determined that appellant owed appellee $25,365.72 for child support arrearages accruing from March 27, 1998 through January 14, 2000, the final day of trial. The magistrate also recommended that appellant pay $28,000 toward appellee's attorney fees and expenses. By judgment entry filed September 18, 2000, the trial court adopted the magistrate's decision.
 {¶ 9} On September 28, 2000, appellant filed preliminary objections to the magistrate's decision, briefly asserting four general errors purportedly made by the magistrate. Appellant averred that he would file final objections after he had a reasonable opportunity to fully review the magistrate's decision. A hearing on the objections was set for November 28, 2000.
 {¶ 10} On November 16, 2000, appellant moved for, and was granted, a continuance to January 11, 2001 to file final objections to the magistrate's decision, as he had yet to receive a copy of the transcript of the hearing before the magistrate.
 {¶ 11} On January 11, 2001, appellant requested, and was granted, five additional days to prepare his final objections. Thereafter, on January 16, 2001, appellant filed his final objections, setting forth 25 objections in a 230-page document. Appellee filed a response to the objections and, on May 4, 2001, filed a motion requesting an award of attorney fees and expenses incurred in preparing her response.
 {¶ 12} On May 4, 2001, the trial court heard the arguments of counsel on select objections. Thereafter, on May 24, 2002, the trial court filed a decision addressing each of appellant's 25 objections. The trial court overruled appellant's objections as to the magistrate's (1) imputation of income, local income taxes and child care expenses to appellee, (2) failure to properly calculate appellant's corporate and personal income, (3) failure to apportion to appellee her presumptive child support obligation, (4) retroactive application of the child support award to the date appellee filed her motion to modify, (5) award of attorney fees to appellee, and (6) refusal to admit depositions of appellee and her husband at trial. The magistrate sustained appellant's objections as to the magistrate's (1) failure to include recurring capital gains in appellee's income, and (2) failure to average appellant's interest and divided income. The magistrate sustained in part and overruled in part appellant's objections regarding the magistrate's calculation of the deviation amount.
 {¶ 13} The trial court filed a judgment entry on May 24, 2002, reiterating its rulings on each of the 25 objections and remanding the matter to the magistrate for the limited purpose of preparing, in accordance with the court's decision, a guideline child support worksheet, an adjustment of the downward deviation of child support, and a judgment entry reflecting the adjusted amounts.
 {¶ 14} Upon remand from the trial court, the magistrate filed a decision on June 12, 2002, attached to which was a newly prepared guideline child support worksheet which purportedly incorporated the new findings issued by the court. The magistrate further noted that although she did not so state in her first decision, it was her intention to modify the shared parenting plan as it related to work-related child care costs. Accordingly, the magistrate modified the parties' shared parenting plan to require that each parent pay their respective child care costs when the children are in their possession.
 {¶ 15} Pursuant to the new child support worksheet, the magistrate determined that appellant would owe $2,727.23 per month for both children. The magistrate further determined, however, that the worksheet amount was unjust, inappropriate and not in the best interests of the children, and recommended a downward deviation of $1,019.43 per month, which was calculated using the same percentage as in the initial decision, i.e., 37.38 percent. Accordingly, the magistrate recommended an adjusted annual child support award of $20,493 ($1,707.80 per month for both children) retroactive to March 27, 1998. Based upon the new child support award, the magistrate recalculated the arrearage to be $24,453.16. The trial court adopted the magistrate's decision by judgment entry filed June 12, 2002.
 {¶ 16} On June 24, 2002, appellant filed preliminary objections to the magistrate's decision and averred that final objections would be forthcoming.
 {¶ 17} On July 25, 2002, appellant sought, and was granted, a continuance until August 2, 2002 to file his final objections to the magistrate's second decision. In compliance with the court's order, appellant filed final objections on August 2, 2002. Therein, appellant contended that the magistrate's new child support order was unfair because it did not require proportionate contribution by the parties, as it failed to account for the actual expenditures made for the children by each party. Appellant further argued that the magistrate improperly modified the shared parenting plan to require that each parent pay their respective work-related child care costs. Appellant also argued that the magistrate failed to comply with the trial court's instructions on deviation issues. Appellant also reasserted each of the objections previously raised in connection with the magistrate's original decision.
 {¶ 18} On August 5, 2002, appellant filed a motion requesting that the trial court declare former R.C. 3113.215(B)(6)(a) unconstitutional as applied in equal time shared parenting cases. The trial court, on April 23, 2003, filed a decision and judgment entry dismissing appellant's motion for lack of jurisdiction on the ground that appellant failed to serve upon the Ohio Attorney General a copy of the motion as required by R.C. 2721.12(A).
 {¶ 19} On September 3, 2002, the trial court heard the arguments of counsel regarding appellant's objections to the second magistrate's decision. Thereafter, on April 23, 2003, the trial court filed a decision and judgment entry overruling appellant's objections, finding that its May 24, 2002 decision and June 12, 2002 judgment entry rendered final dispositions on all issues raised in appellant's objections.
 {¶ 20} On May 9, 2003, appellant, pursuant to Civ.R. 60(B), filed a motion for relief from the trial court's April 23, 2003 judgment which dismissed his August 5, 2002 motion on jurisdictional grounds. Appellant argued that he fully complied with the service requirements of R.C. 2721.12(A).
 {¶ 21} The trial court, on June 17, 2003, filed a decision and judgment entry granting appellee's May 4, 2001 motion for attorney fees and ordered appellant to pay $10,000 toward appellee's attorney fees. Also on June 17, 2003, the trial court filed a decision and judgment entry overruling appellant's Civ.R. 60(B) motion.
 {¶ 22} Appellant timely appealed the two judgment entries filed April 23, 2003, as well as the two June 17, 2003 judgment entries. The appeal from the April 23, 2003 judgment entries, docketed as 03AP-494, and the appeal from the June 17, 2003, judgment entries, docketed as 03AP-728, have been consolidated. In case No. 03AP-494, appellant sets forth the following nine assignments of error:
Assignment of Error One
The trial court erred when it found that the Appellee was unable to work in the media sales field.
Assignment of Error Two
The trial court erred when it determined the Appellant's business expenses.
Assignment of Error Three
The trial court erred when it imputed income to the Appellant from a promissory note.
Assignment of Error Four
The trial court erred regarding its handling of parties' local income taxes.
Assignment of Error Five
The trial court erred regarding its handling of the imputed child care expenses issues.
Assignment of Error Six
The trial court erred when it failed to presume that the Appellee must pay her presumptive child support obligation.
Assignment of Error Seven
The trial court erred when it failed to grant an appropriate deviation regarding the Appellant's child support obligation.
Assignment of Error Eight
The trial court erred when it ordered the Appellant to pay the Appellee's attorney fees and expenses.
Assignment of Error Nine
The trial court erred when it failed to consider the most recent eight months of data regarding the Appellant's businesses.
 {¶ 23} In case No. 03AP-728, appellant sets forth the following three assignments of error:
Assignment of Error One
The trial court erred when it found that the Appellee "would be unable to protect her interests and fully litigate her rights" without the award of $10,000.00 in attorney fees.
Assignment of Error Two
The trial court erred when it ordered the Appellant to pay the Appellee $10,000.00 in attorney fees.
Assignment of Error Three
The trial court erred when it denied the Appellant's motion for relief from judgment.
 {¶ 24} In case No. 03AP-494, appellant's first seven assignments of error, along with his ninth assignment of error, contend that the trial court committed various errors in calculating child support. To that end, we note that a trial court has considerable discretion related to the calculation of child support, and, absent an abuse of discretion, an appellate court will not disturb a child support order. Pauly v. Pauly
(1997), 80 Ohio St.3d 386, 390. An abuse of discretion is "more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable."Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. Moreover, in applying the abuse of discretion standard, a reviewing court may not substitute its judgment for that of the trial court.Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, 621.
 {¶ 25} In order to modify a child support order, the trial court must engage in a two-step process: (1) a determination of whether there has been a substantial change in circumstances, and (2) if so, a re-determination of the amount of child support in accordance with the guidelines in R.C. 3113.21 to 3113.219.Leonard v. Erwin (1996), 111 Ohio App.3d 413, 416.
 {¶ 26} If the modification is based upon a change in income, the trial court must use a child support computation worksheet to recalculate the support obligation in order to determine whether a substantial change in circumstances has occurred. See R.C.3113.215(B)(4). If the new worksheet calculations change the previous order by at least 10 percent, then the child support order must be modified. See DePalmo v. DePalmo (1997),78 Ohio St.3d 535, paragraph two of the syllabus. Once that change has been demonstrated, the trial court may then make the modification in accordance with the statutory factors and guidelines. Id.
 {¶ 27} R.C. 3113.215 requires a trial court to follow certain procedures in calculating and awarding child support.[1]
"Its provisions are mandatory in nature and must be followed literally and technically in all material respects." Murray v.Murray (1999), 128 Ohio App.3d 662, 666, citing Marker v.Grimm (1992), 65 Ohio St.3d 139. A trial court's failure to comply with the literal requirements of R.C. 3113.215 constitutes reversible error. Marker, at 143.
 {¶ 28} Pursuant to R.C. 3113.215(B)(1), a trial court must calculate an obligor's child support obligation in accordance with the basic child support schedule set forth in R.C.3113.215(D) and the applicable model worksheet in R.C.3113.215(E) or (F). If the court makes the proper calculations based upon the schedule and applicable worksheet, the amount shown on the worksheet "is rebuttably presumed to be the correct amount of child support due." R.C. 3113.215(B)(1). "Any court-ordered deviation from the applicable worksheet and the basic child support schedule must be entered by the court in its journal and must include findings of fact to support such determination." Marker, at paragraph three of the syllabus.
 {¶ 29} In addition, where the combined gross income of both parents is greater than $150,000, the court must determinate the amount of child support "on a case-by-case basis and shall consider the needs and the standard of living of the children who are the subject of the child support order and of the parents." R.C. 3113.215(B)(2)(b). The trial court must order a support award that is at least the same percentage of the parents' combined annual income than would result in the guidelines for $150,000. (In the instant case, since there are two children, that percentage is 14.64733.) The court may not deviate from this requirement unless it determines that it would be unjust, inappropriate, or not in the best interest of the children, obligor, or obligee to order that amount, and the trial court enters this determination in its journal with findings of fact supporting that determination. R.C. 3113.215(B)(2)(b) and (c).Schultz v. Schultz (1996), 110 Ohio App.3d 715, 721. R.C.3113.215(B)(3) sets forth a number of factors a trial court may consider in determining whether the calculated child support award is unjust, inappropriate, or not in the best interests of the children.
 {¶ 30} In addition to the foregoing, when modifying a child support order under a shared parenting plan, the court must follow R.C. 3113.215(B)(6)(a). R.C. 3113.215(B)(6)(a) permits a deviation from the amount calculated in accordance with the basic child support schedule and worksheet set forth in R.C.3113.215(E) only where the application of the schedule and worksheet would be unjust or inappropriate to the children or either parent and would not be in the best interests of the children because of the extraordinary circumstances of the parents or because of any other factors or criteria set forth in R.C. 3113.215(B)(3). "Extraordinary circumstances of the parents" is defined to include the amount of time the children spend with each parent, the ability of each parent to provide adequate housing for the children, and the amount of expenses each parent sustains. R.C. 3113.215(B)(6)(b)(i) through (iii).
 {¶ 31} The party seeking to rebut the basic child support schedule has the burden of presenting evidence which demonstrates that the calculated award is unjust or inappropriate and would not be in the best interests of the children. Murray, at 671.
 {¶ 32} By the first assignment of error, appellant contends that the trial court erred in not imputing income to appellee commensurate with her earning potential in the media sales field.
 {¶ 33} At the hearing, appellee testified that she was employed in the media sales field from 1984 to May 15, 1997, when she voluntarily left her job as sales manager for a local radio station. In 1993, 1994, 1995 and 1996, appellee earned $66,815, $59,544.26, $66,292.09 and $88,818.86, respectively. Pursuant to her employment contract for 1997, she was to earn a base salary of $67,000, plus commissions; however, since she worked only until mid-May, she earned only $38,334.
 {¶ 34} Appellee testified that she resigned her position due to job stress and family commitments. In particular, appellee averred that she was often required to attend out-of-town or after-hours functions which conflicted with her parental responsibilities. Appellee testified that she "couldn't be the mother that [she] wanted to be and be the sales manager that [she] needed to be" and that it "drove [her] insane." (Tr. Vol. IV, 37.) According to appellee, she went to counseling in an effort to help her deal with her conflicting roles and was prescribed antidepressants and anti-anxiety medication; however, she was unable to cope with the stress and ultimately resigned. She further testified that as of the date of the hearing, she continued to take an antidepressant; however, she no longer attended counseling. Although she admitted that she had no physical problems that would prevent her from working, she averred that given her current circumstances, i.e., a mother of three young children, she would be unable to work full-time in any occupation because it would be too stressful. In addition, she testified that she presently had no desire to work outside the home because the benefits her children received from her being a full-time homemaker outweighed the stresses associated with full-time employment.
 {¶ 35} Vocational consultant Steven Rosenthal testified as an expert witness on behalf of appellant as to appellee's income potential. In pertinent part, Rosenthal opined that given appellee's recent employment history, job qualifications and the prevailing job opportunities and salary levels in the Columbus area, appellee's best employment opportunity would be to work as a sales executive in the media industry. Rosenthal testified that if appellee re-entered the media sales job market, she would be able to earn between $65,000 and $75,000 annually. Finally, Rosenthal opined that based upon her education and work experience, appellee's earning potential in employment areas other than media sales was between $35,000 and $45,000.
 {¶ 36} To determine child support obligations under R.C.3113.215, the trial court must determine the annual income of each parent. R.C. 3113.215(A)(1) provides in relevant part that:
"Income" means either of the following:
(a) For a parent who is employed to full capacity, the gross income of the parent;
(b) For a parent who is unemployed * * * the sum of the gross income of the parent, and any potential income of the parent.
 {¶ 37} R.C. 3113.215(A)(5) states in part:
"Potential income" means * * * for a parent that the court * * * determines is voluntarily unemployed or voluntarily underemployed:
(a) Imputed income that the court * * * determines the parent would have earned if fully employed as determined from the parent's employment potential and probable earnings based on the parent's recent work history, the parent's occupational qualifications, and the prevailing job opportunities and salary levels in the community in which the parent resides[.]
 {¶ 38} Thus, a trial court must consider both the gross income and the "potential income" of a parent the court determines to be voluntarily unemployed or underemployed. The "potential income" to be imputed to such parent is to be determined based upon the amount the parent would have earned if the parent had been "fully employed." R.C. 3113.215(A)(5)(a). That amount is to be determined by the parent's employment potential and probable earnings based on the parent's recent work history, job qualifications, and the prevailing job opportunities and salary levels in the community in which the parent resides. See Rock v. Cabral (1993), 67 Ohio St.3d 108, 111.
 {¶ 39} In the syllabus of Rock, the Ohio Supreme Court stated:
Whether a parent is "voluntarily underemployed" [or unemployed] within the meaning of R.C. 3113.215(A)(5), and the amount of "potential income" to be imputed to a child support obligor, are matters to be determined by the trial court based upon the facts and circumstances of each case. The determination will not be disturbed on appeal absent an abuse of discretion.
 {¶ 40} The imputation of income involves a two-step process. First, the trial court must find that the parent is voluntarily unemployed or underemployed. Once the court makes such a finding, the court must then determine the amount of income to impute, based upon the factors in R.C. 3113.215(A)(5)(a), and the facts and circumstances in the case.
 {¶ 41} The magistrate found that appellee voluntarily left her employment due to job stress and family commitments. The magistrate determined that while appellee's reasons for leaving her prior employment were legitimate, she was capable of maintaining a job with less stress and less time commitment. The magistrate further noted Rosenthal's testimony that appellee's earning potential in areas other than media sales was between $35,000 to $45,000 annually, given her job skills, education, and areas of interest. Based upon these findings, the magistrate recommended that income of $45,000 be imputed to appellee. In ruling on appellant's objection, the trial court determined that the record supported the magistrate's recommendation. Accordingly, the trial court found that appellee was voluntarily unemployed and imputed income of $45,000 to appellee.
 {¶ 42} Upon review of the record, we cannot say that the trial court abused its discretion in imputing to appellee income of $45,000, rather than the $65,000 to $75,000 range appellee could potentially earn if she re-entered the media sales field. Initially, we agree with the trial court's express rejection of appellant's interpretation of the phrase "fully employed" in R.C.3113.215(A)(5) as requiring the imputation of income at the level of the highest paying job a parent could reasonably obtain. Such an interpretation runs afoul of the Rock court's directive that a trial court enjoy broad discretion in determining, on a case-by-case basis, the amount of potential income to be imputed to a voluntarily underemployed or unemployed parent.
 {¶ 43} Here, in accordance with Rock, the trial court considered the facts and circumstances of the case in determining the amount of potential income to be imputed to appellee. The trial court clearly indicated that it found appellee's decision to leave the media sales field and stay home with her children justifiable based upon her testimony that she sought counseling and was prescribed anti-anxiety and antidepressant medication in an effort to cope with the stress she experienced trying to manage a full-time sales job while raising three young children. The court noted that appellee's testimony in this regard was not contradicted. The court further found that appellee's decision to leave her job was made with due regard to her obligation to provide for her children both financially and emotionally, was not made to circumvent her child support obligation, and that no evidence suggested that the children suffered as a result of appellee's decision. We are mindful of the fact that "[t]he primary design and purpose of R.C. 3113.215 are to protect and ensure the best interests of children." Id. at 222. Accordingly, we cannot find that the trial court abused its discretion in refusing to impute income to appellee at the level she could potentially earn in the media sales field.
 {¶ 44} The trial court further observed that although appellee was physically capable of maintaining a full-time job outside her field of expertise without detriment to herself or her children, she had voluntarily chosen not to do so. Accordingly, the trial court imputed income at the highest salary range outside of appellee's field of expertise, i.e., $45,000. We find such decision entirely appropriate under the facts and circumstances of this case. Appellant's first assignment of error is overruled.
 {¶ 45} By the second assignment of error, appellant contends that loan repayments totaling $50,000 made by Tonti Homes in 1997 and 1998 and a cash expenditure of $272,860 made by T-Interests in 1995 constituted "ordinary and necessary expenses incurred in generating gross receipts" and, therefore, should have been deducted from his gross income in calculating his child support obligation.
 {¶ 46} As we have previously noted, to determine child support obligations under R.C. 3113.215, the trial court must determine the annual income of each parent. For a parent who is employed to full capacity, "income" means the "gross income" of the parent. "Gross income" is defined in R.C. 3113.215(A)(2) and includes, in relevant part, "the total of all earned and unearned income from all sources during a calendar year, whether or not the income is taxable, and includes, but is not limited to * * * self-generated income[.]" R.C. 3113.215(A)(3) defines "[s]elf-generated income" as: "gross receipts received by a parent from self-employment, proprietorship of a business, joint ownership of a partnership or closely held corporation, and rents minus ordinary and necessary expenses incurred by the parent in generating the gross receipts." Pursuant to R.C.3113.215(A)(4)(a), "[o]rdinary and necessary expenses incurred in generating gross receipts" is defined as "actual cash items expended by the parent or the parent's business * * *."
 {¶ 47} Appellant first contends that the trial court erred in failing to deduct from his gross income mortgage loan payments totaling $50,000 made by Tonti Homes. According to appellant, Tonti Homes is engaged in the business of purchasing unimproved land and/or improved lots for purposes of building and selling and/or renting single-family and multi-family homes. To finance the acquisitions, Tonti Homes typically borrows money via short-term construction loans. Tonti Homes purchased from Thirty-Four Corporation six lots for subsequent building and obtained short-term (five-year) financing from Thirty-Four Corporation. In 1997 and 1998, Tonti Homes made lump-sum principal reduction payments totaling $50,000 on the loans. Appellant claimed that these lump-sum payments constituted ordinary and necessary business expenses and, therefore, should be deducted from his gross income in calculating his child support obligation.
 {¶ 48} The magistrate did not deduct the lump-sum principal repayments as ordinary and necessary business expenses, averring that the loans were for undeveloped lots and were not associated with rental property. The magistrate further stated that appellant provided no evidence as to whether the payments were required payments or early payoffs. The magistrate further noted that the evidence established that other loans made to Tonti Homes by appellant's father's corporations were clearly amortized and paid over a much longer period of time. Although the trial court overruled appellant's objection regarding the magistrate's failure to deduct as ordinary and necessary several expenditures made by appellant's corporations, it did not specifically address the challenged loan payments in its decision.
 {¶ 49} Appellant contends that the only relevant question to be considered in determining whether the loan payments should be deducted as ordinary and necessary business expenses for purposes of calculating his child support obligation is whether the acquisition of the lots was made as part of the ordinary and necessary business operation of Tonti Homes, and not, as the magistrate determined, whether the method of repayment of the loans underlying the acquisition was ordinary and necessary. We disagree.
 {¶ 50} In support of his argument, appellant cites Kamm v.Kamm (1993), 67 Ohio St.3d 174 and Woods v. Woods (1994),95 Ohio App.3d 222. In Kamm, a self-employed farmer sought to deduct a $22,000 cash purchase of farm equipment as an ordinary and necessary business expense. The court allowed the deduction, holding at paragraph one of the syllabus:
Acquisition of a capital asset by a self-employed, child-support obligor may be deductible against such obligor's gross receipts for the purpose of computing the obligor's child-support obligation in accordance with R.C. 3113.215, provided the acquisition is otherwise both "ordinary and necessary" and is acquired by an actual cash expenditure.
 {¶ 51} In Woods, the court authorized a self-employed truck driver to deduct both the principal and interest portion of his loan installment payments on his truck as an ordinary and necessary business expense. The Woods court observed: "There can be no question but that the purchase of a truck by a self-employed truck driver is an ordinary and necessary expense to the driver." Id. at 225.
 {¶ 52} In Helfrich v. Helfrich (Sept. 17, 1996), Franklin App. No. 95APF12-1599, this court sanctioned a deduction from gross income of both the principal and interest portions of the father's monthly mortgage payments on his rental properties. In allowing the deduction, this court noted that the mortgages on the rental properties were incurred in acquiring the rental properties. This court further noted that both the principal and interest portions of a monthly mortgage payment constitute "actual cash expenditures." Id., citing Woods, at 225.
 {¶ 53} The determination as to whether a child support obligor's expenditures fall within the definition of "ordinary and necessary" is within the sound discretion of the trier of fact. Ratti v. Rogers (Dec. 27, 1999), Knox App. No. 99 CA 3. Further, each case must be reviewed individually, taking into consideration the parties' total financial circumstances. Id., citing Kamm, at 178. The trier of fact is in a far better position than an appellate court to weigh the credibility of witnesses. Id.
 {¶ 54} Assuming, without deciding, that the acquisition of the properties was made in the course of Tonti Homes' ordinary and necessary business practices, we cannot find that the principal payments at issue here constituted an ordinary and necessary business expense. In contrast to the regular monthly mortgage payments considered in Woods and Helfrich, which included both principal and interest, appellant made lump-sum principal payments only. Appellant presented no evidence, other than his own testimony that he was required to make the payments, as to why he paid off the loans in a lump sum. Appellant submitted no evidence establishing that he could not have paid off the loans to his father's corporations through refinancing or borrowing funds from some other source.
 {¶ 55} Further, appellee's financial expert, Michael Nesser, testified that the principal payments at issue do not constitute ordinary and necessary business expenses under generally accepted accounting principles. Nesser noted that the payments at issue were not made as part of a regular monthly mortgage payment; rather, Tonti Homes applied the proceeds from the sale of a home to pay off the remaining balance of the loans. Accordingly, we find no abuse of discretion in the trial court's refusal to include the lump-sum principal payments as ordinary and necessary business expenses.
 {¶ 56} Appellant next contends that a cash expenditure of $272,860 made by T-Interests should have been deducted from his gross income as an ordinary and necessary business expense. Evidence from the hearing established that T-Interests purchased two multi-floor commercial properties in late 1995 for a total of $415,000, paying $272,860 in cash and financing the $142,140 remainder. According to appellant, the properties were acquired both for the purpose of generating immediate income from the rental of the first floors of the properties and for possible redevelopment of the sites. Rental income from the properties was established at $62,746 in 1996, $57,877 in 1997, and $38,655 in 1998.
 {¶ 57} The magistrate disallowed the deduction, finding that although significant cash reserves were utilized to purchase the properties, the properties were not significant sources of income and appeared to have been purchased for investment purposes. The trial court overruled appellant's objection without specifically addressing the challenged expenditure in its decision.
 {¶ 58} We are not inclined to find an abuse of discretion in the characterization of T-Interests' acquisition of the properties as being for investment purposes rather than for generating gross receipts. As noted by the magistrate, the income derived from rental of the properties is rather insignificant when compared to the amount of the expenditure. Further, as of the time of the hearing, four years after the properties were acquired, the properties were not fully rented and appellant had no plans to renovate them. Accordingly, the trial court did not abuse its discretion in refusing to deduct the cash expenditure of $272,860 made by T-Interests as an ordinary and necessary business expense. Appellant's second assignment of error is overruled.
 {¶ 59} By the third assignment of error, appellant contends the trial court erred in including in its calculation of his gross income an average cash flow income of $7,000 received from a cognovit note.
 {¶ 60} In 1987, appellant received a $125,000 cognovit note, payable on demand, from Thirty-Four Corporation in payment for work appellant allegedly performed that year. Appellant testified that he declared the entire $125,000 as income on his 1987 federal tax return and paid taxes on the income. The note accrued no interest and appellant received no payments on the note until 1996. Thereafter, payments totaling $28,000 were made on the note from 1996 through 1998. A $1,500 payment was made in 1999, and as of October 31, 1999, $95,500 was still due and owing on the note.
 {¶ 61} The magistrate averaged the income appellant received from the note over the four-year period from 1995 through 1998, arriving at an annual income figure of $7,000, and included that amount in the calculation of appellant's gross income. Appellant objected on three separate grounds. The trial court overruled appellant's objection, finding no merit to any of appellant's arguments.
 {¶ 62} We find no abuse of discretion in the trial court's inclusion of the $7,000 in its calculation of appellant's gross income. "Gross income" is defined in R.C. 3113.215(A)(2) as "the total of all earned and unearned income from all sources during a calendar year, whether or not the income is taxable" and includes "potential cash flow from any source." "Gross income" does not include "[n]onrecurring or unsustainable income or cash flow items." R.C. 3113.215(A)(2)(e). "Nonrecurring or unsustainable income or cash flow item" is defined as "any income or cash flow item that the parent receives in any year or for any number of years not to exceed three years and that the parent does not expect to continue to receive on a regular basis." R.C.3113.215(A)(11).
 {¶ 63} Appellant contends that because he reported the note as income on his 1987 federal income tax return, the income was not received within the 12-month period prior to the hearing and thus does not constitute gross income under R.C. 3113.215(A)(2). Appellant's contention is misplaced, however, as the theory behind determining income for child support purposes is different from that of stating income for tax purposes. R.C.3113.215(A)(2); Helfrich, supra. Furthermore, R.C.3113.215(B)(5)(a) mandates that "parents shall verify current and past income and personal earnings with suitable documents" including tax returns and "all supporting documentation and schedules for the tax returns." Appellant did not submit his 1987 federal income tax return to corroborate his testimony that he declared the note as income in that year.
 {¶ 64} We further find no merit to appellant's second and third contentions, i.e., that the note was an asset which merely changed form from a note to cash and thus did not constitute income, and that income from the note was nonrecurring and unsustainable within the meaning of R.C. 3113.215(A)(11). Although the note was an asset, funds received from the note constituted income when received by appellant. Further, because a significant portion of the note is still due and payable, it is reasonable to expect that payments will continue to be made on a regular basis. Appellant's third assignment of error is overruled.
 {¶ 65} Appellant's fourth assignment of error challenges the trial court's treatment of the parties' local income taxes. More specifically, appellant contends that the trial court abused its discretion in: (1) imputing local income taxes to appellee's income and, (2) failing to deduct local income taxes from appellant's income.
 {¶ 66} The magistrate imputed $900 (two percent of the $45,000 imputed gross income) in local income taxes to appellee. The magistrate's income tax deduction of $900 was made on line 10 of the child support worksheet. R.C. 3113.215, line 10, provides a deduction from gross annual income for the "[a]mount of local income taxes actually paid or estimated to be paid." Appellant objected, contending that the phrase "actually paid" means that the taxes have in fact been paid, and that the phrase "estimated to be paid" means that the taxes will at some point in the future be determined and paid. Appellant argued that because appellee had not worked since 1997, she did not in fact, nor would she in the future, pay local income taxes.
 {¶ 67} The trial court overruled appellant's objection on the authority of Zaccardelli v. Zaccardelli (July 26, 2000), Summit App. No. 19894, wherein the court held that where hypothetical income is imputed to a parent based upon the parent's unemployment or underemployment, it is reasonable to deduct the amount of hypothetical local income taxes that would be paid on that hypothetical income. We agree with the reasoning inZaccardelli and thus find no merit to appellant's contention.
 {¶ 68} Appellant further contends that the trial court erred in failing to impute local income taxes to the income derived from the cognovit note and to the average cash flow generated by and retained in appellant's four corporations. We disagree.
 {¶ 69} As noted previously, R.C. 3113.215(E), line 10, permits a deduction for local income taxes "actually paid or estimated to be paid." With regard to the cognovit note, the evidence established the average amount of income appellant actually received from the cognovit note; however, appellant presented no evidence that the note payments would incur local income taxes or that he paid local income taxes when he declared the note on his 1987 federal income tax return. Similarly, evidence was presented establishing the average cash flow generated by and retained in appellant's four corporations; however, appellant presented no evidence of any local income tax consequences to the corporate cash flow. Indeed, appellant's local income tax returns include his Schedule C income with no liabilities reported for earnings retained in appellant's corporations. Thus, the trial court did not abuse its discretion in not deducting local income taxes from the income derived from the note or from the corporations' average cash flow. Appellant's fourth assignment of error is overruled.
 {¶ 70} In his fifth assignment of error, appellant contends that the trial court erroneously imputed child care expenses to appellee. R.C. 3113.215(E), line 18, mandates the trial court to include "[a]nnual child care expenses for the children who are the subject of this order that are work, employment training, or education related, as approved by the court or agency (deduct the tax credit from annual cost, whether or not claimed)." R.C.3113.215(E), line 23, requires that the court enter the amount entered on line 18 as the "[a]djustment for actual expenses paid for annual child care expenses * * *." In her initial decision, the magistrate found that if appellee were to work full-time, she would need child care for the children while they were in her possession. Accordingly, the magistrate recommended appellee receive a child care credit for 1999 of $2,584, which was calculated at $70 per week for 39 weeks of school plus $250 every two weeks for four weeks of summer vacation less the tax credit of $646. For 1998, the magistrate recommended appellee receive a credit of $952, which was calculated at $70 per week for 17 weeks less the tax credit of $238.
 {¶ 71} The trial court determined that it was reasonable for the magistrate to impute child care expenses to appellee where income had been imputed to appellee. The court noted, however, that in order for the magistrate to have imputed child care expenses to appellee, the magistrate should have also modified the shared parenting order concerning appellant's payment of child care expenses. Accordingly, the court concluded that the magistrate erred in imputing child care expenses to appellee without accounting for the previous court-ordered child care expenses to be paid by appellant.
 {¶ 72} On remand, the magistrate modified the parties' shared parenting plan to require each party to pay his or her own child care expenses. Appellant objected on grounds that the magistrate exceeded both the scope of the court's remand and her authority in modifying the child care provisions of the parties' shared parenting plan. The trial court summarily overruled appellant's objections.
 {¶ 73} On appeal, appellant contends that the trial court: (1) had no authority to impute child care expenses to appellee, (2) improperly modified the child care provisions of the shared parenting plan, (3) abused its discretion in imputing child care expenses to appellee because she had no plans to return to the workforce.
 {¶ 74} We find that the trial court did not exceed its authority in imputing child care expenses to appellee. InBeekman v. Beekman (Oct. 25, 1996), Huron App. No. H-96-002, the court found that "[a]lthough R.C. 3113.215 does not specifically provide for the imputation of child care expenses, the basic child support computation worksheet does provide for the consideration of child care expenses where the custodial parent is employed and must incur this expense to maintain employment." The court held that the deduction of imputed child care expenses was appropriate where the court previously imputed income to a parent and properly deviated from the child support schedule and worksheet.
 {¶ 75} We further find that the trial court did not abuse its discretion in imputing child care expenses to appellee. "Judgments supported by some competent, credible evidence * * * will not be reversed by a reviewing court as being against the manifest weight of the evidence." C.E. Morris Co. v. FoleyConstr. Co. (1978), 54 Ohio St.2d 279, syllabus. The amount of child care expenses imputed to appellee is supported by competent, credible evidence. Appellee testified that she was uncertain of the cost of child care alternatives, as the parties previously had in-home child care. However, she indicated that the latch-key program during the school year would cost approximately $30 to $40 per week per child. She further stated that during the children's summer break from school she would probably hire a high school or college student and pay them approximately $5 per hour for 10 hours a day for the 5 work days she would have possession of the children in a two-week period. The trial court did not abuse its discretion in relying upon appellee's testimony and imputing child care expenses along with the imputation of income.
 {¶ 76} Finally, we address appellant's contention that the trial court erred by modifying the child care provisions of the shared parenting plan.
 {¶ 77} R.C. 3109.04(E)(2)(b) provides:
The court may modify the terms of the plan for shared parenting approved by the court and incorporated by it into the shared parenting decree upon its own motion at any time if the court determines that the modifications are in the best interest of the children or upon the request of one or both of the parents under the decree. Modifications under this division may be made at any time. The court shall not make any modification to the plan under this division, unless the modification is in the best interest of the children.
 {¶ 78} In her decision on remand, the magistrate clearly altered the terms of the parties' shared parenting plan, which required appellant to pay up to $13,752 annually for child care, by requiring each party to pay his or her own child care expenses. Although R.C. 3109.04(E)(2)(b) provides the trier of fact authority to modify the terms of the shared parenting plan at any time, the statute clearly states that such modification must be in the best interests of the child. See Larkey v.Larkey (Nov. 4, 1999), Cuyahoga App. No. 74765. Neither the magistrate nor the trial court made a finding that altering the shared parenting plan with respect to the child care expenses was in the best interests of the children as required by the statute. Accordingly, we remand the matter to the trial court to enter a finding regarding the best interests of the children. Appellant's fifth assignment of error is sustained in part and overruled in part.
 {¶ 79} Appellant's sixth assignment of error contends that the trial court erred in failing to apportion appellee her presumptive child support obligation. In his objections to the magistrate's initial decision, appellant requested that the trial court presume each of the parents pay their respective child support obligations listed in R.C. 3113.215(E), line 24, and offset appellant's support obligation by appellee's. In so requesting, appellant argued that this court's decision in Hubinv. Hubin (June 30, 2000), Franklin App. No. 99AP-1156, which rejected an argument identical to that raised by appellant, and upon which the magistrate apparently relied in calculating appellant's child support obligation, was wrongly decided. Noting that the Ohio Supreme Court had allowed an appeal and certified a conflict in Hubin, appellant requested that the trial court stay its decision on the objection until the Ohio Supreme Court decided Hubin. The trial court granted appellant's request.
 {¶ 80} The question certified to the Ohio Supreme Court was: "When determining the proper amount of child support in a shared parenting case, must a court presume that each parent must pay his or her child support obligation on line twenty-four of the child support worksheet and then order the difference through an offset while reserving the ability to deviate?" Hubin v. Hubin
(2000), 90 Ohio St.3d 1482. In affirming this court's decision, the court cited Pauly, which held at the syllabus: "R.C.3113.215(B)(6) does not provide for an automatic credit in child support obligations under a shared parenting order. However, a trial court may deviate from the amount of child support calculated under R.C. 3113.215(B)(6) if the court finds that the amount of child support would be unjust or inappropriate to the children or either parent and would not be in the best interest of the child." See Hubin v. Hubin (2001), 92 Ohio St.3d 240. On the authority of Hubin, the trial court overruled appellant's objection.
 {¶ 81} Appellant now contends that Hubin is not dispositive of the instant case because the parties in Hubin shared parenting time with their children on a 60/40 basis rather than a 50/50 basis as in the instant case. Initially, we note that in requesting the stay in the trial court, appellant did not assert that the Ohio Supreme Court's decision in Hubin would not be dispositive of the instant case. To the contrary, appellant argued that the "legal issues raised in Hubin are identical to the legal issues raised in [the instant case]," and that the Ohio Supreme Court would "definitively state what the law is regarding the determination of child support in shared parenting cases." (Appellant's April 26, 2001 Request That Court Stay Its Decision, 1, 2-3.) It now appears that since the Ohio Supreme Court's decision in Hubin is unfavorable to appellant's position, he seeks to differentiate it factually from the instant case. We find no merit to appellant's contention. The question certified to, and answered by, the Ohio Supreme Court concerned shared parenting cases generally and was not limited to any particular parenting time percentage. Accordingly, the trial court did not abuse its discretion in failing to offset appellant's child support obligation by appellee's. Appellant's sixth assignment of error is overruled.
 {¶ 82} By the seventh assignment of error, appellant contends that the trial court abused its discretion in its deviation from the guideline support amount.
 {¶ 83} As previously mentioned, in a shared parenting arrangement, R.C. 3113.215(B)(6)(a) requires the trial court to order the guideline amount unless the court determines that the amount calculated would be unjust or inappropriate and would not be in the best interests of the child(ren). To support a deviation from the guideline amount, the trial court must consider the factors in R.C. 3113.215(B)(3) and the extraordinary circumstances of the parents as provided in R.C.3113.215(B)(6)(b)(i), (ii) and (iii), including each parent's expenses, and must enter in the journal findings of fact supporting the deviation.
 {¶ 84} In her initial decision, the magistrate calculated appellant's guideline support obligation at $33,536 or $2,794.66 per month for both children. After making express findings of fact regarding each of the factors in R.C. 3113.215(B)(3) and3113.215(B)(6)(b)(i), (ii), and (iii), the magistrate determined that the guideline amount was unjust, inappropriate and not in the best interests of the children and recommended a downward deviation of 37.38 percent or $1,044.67 per month. Accordingly, the magistrate recommended that appellant's monthly child support obligation be set at $1,750.
 {¶ 85} Appellant objected on several grounds. In pertinent part, appellant argued that the magistrate committed factual and legal errors in her analysis of R.C. 3113.215(B)(6)(b)(iii), i.e., the parties' expenditures on the children. In considering appellant's objection, the trial court conducted a de novo review of both parties' expenses for such items as clothing, school-related expenditures, sports fees, horseback riding lessons and unreimbursed medical and/or dental expenses and concluded that neither party's expenses were unreasonable or extraordinary. The trial court determined, however, that the magistrate's finding regarding R.C. 3113.215(B)(6)(b)(iii) was incomplete, as appellee's allocation of common expenses in her household was unfair. Specifically, the trial court found that the allocation of 50 percent of the mortgage payment to the parties' two children was unfair, given that five people, including appellee's new husband and child, resided in the home. The trial court suggested that it might be fair to allocate 20 percent of the mortgage to each of the parties' children and to reduce that amount to account for the diminished time the children spent in appellee's home; however, the court acknowledged that other methods could be utilized to fairly allocate appellee's common expenses.
 {¶ 86} Despite finding such error, the court determined that the magistrate properly deviated from the guideline amount. The court further determined, however, that because the magistrate had not accurately calculated the guideline amount of child support, the deviation amount was likewise not appropriately determined. As previously noted, the court remanded the matter to the magistrate for the limited purpose of preparing a guideline child support worksheet in accordance with the court's decision and an adjustment of the downward deviation.
 {¶ 87} In her decision on remand, the magistrate indicated that she prepared a new worksheet incorporating the court's findings. The magistrate calculated appellant's annual support obligation at $32,726.80 per year or $2,727.23 per month for both children. The magistrate found the guideline amount to be unjust, inappropriate and not in the best interests of the children and recommended a downward deviation from the guideline in the amount of $1,019.43 per month, which was the same percentage (37.38 percent) recommended in the magistrate's initial decision. Accordingly, the magistrate recommended that appellant pay $1,707.80 per month for both children.
 {¶ 88} Appellant objected on several grounds. Appellant first argued that the child support recommended by the magistrate required him to pay more than the combined guideline support obligation of the parties, required appellee to contribute nothing toward the support of the children, and provided appellee with a windfall. More specifically, appellant argued that adding the amount of his direct annual expenditures on the children (approximately $30,000) to his annual support obligation as calculated by the magistrate ($20,493 per year) required appellant to pay approximately $50,000 per year in support of his children, which exceeded (1) his total guideline annual support obligation of $35,126.80 (R.C. 3113.215[E], line 22[a]), and (2) the parents' combined annual guideline support obligation of $43,174.53 (R.C. 3113.215[E], line 21). Appellant further contended that because appellee would receive $20,493 in child support from appellant, she would recoup her entire guideline annual support obligation of $8,047 (R.C. 3113.215[E], line 22[b]) and receive an additional cash windfall (the difference between the amount appellee receives in child support from appellant and the amount she spends directly on the children).
 {¶ 89} In overruling appellant's objections to the second magistrate's decision, the trial court did not specifically address the foregoing contentions. However, we find no merit to appellant's arguments. Implicit in appellant's claim is the flawed proposition that total expenditures, direct and in child support paid, must be limited by the guideline worksheet, and that an obligor's support obligation must be limited by the obligee's budget. Appellant cites no case law in support of his argument. Indeed, in Schultz, supra, this court approved a support order that violates the mathematical principles to which appellant objects. The amount awarded in child support exceeded the yearly expenses for the children. Thus, the obligor could claim that the award requires the obligee to contribute nothing to the support of the children and grants her a windfall. This court found no abuse of discretion in such an award.
 {¶ 90} Appellant also objected to the magistrate's second decision on grounds that the magistrate failed to follow the trial court's implicit instructions to make additional findings of fact regarding appellee's common expenses and to re-determine an appropriate downward deviation.
 {¶ 91} Again, we note that the trial court did not specifically address appellant's contentions; however, in its April 23, 2003 decision and entry, the court noted that it conducted an independent analysis of the issues presented in appellant's objections and concluded that its May 24, 2002 decision and June 12, 2002 judgment entry finally disposed of all issues raised in appellant's objections.
 {¶ 92} Appellant now contends that the magistrate did not comply with the court's instructions on remand; thus, the trial court should have conducted a de novo deviation analysis, including a recalculation of the percentage of downward deviation. We disagree. We glean from the court's statement noted above that the court did not intend that the magistrate make additional findings regarding appellee's common expenses or adjust the percentage of her deviation analysis upon remand Indeed, in its May 24, 2002 decision, the court noted that despite the magistrate's improper allocation of 50 percent of appellee's mortgage payment to the children, the magistrate properly deviated from the guideline amount. The court apparently concluded that the magistrate's error was harmless given the totality of the factors considered. Further, the court found only that the deviation amount was flawed due to faulty worksheet calculations. Accordingly, the trial court did not abuse its discretion in refusing to find fault with the magistrate's application of the same percentage deviation as was applied in the original decision. Appellant's seventh assignment of error is overruled.
 {¶ 93} We next address appellant's ninth assignment of error, which contends that the trial court abused its discretion in failing to consider the most recent eight months of data regarding appellant's corporations.
 {¶ 94} R.C. 3113.215(B)(5)(h) states that, "[w]hen the court or agency calculates gross income, the court or agency, when appropriate, may average income over a reasonable period of years." This court has held that it is appropriate to average an obligor's income for the purpose of calculating the obligor's child support obligation where the obligor's income is unpredictable or inconsistent. Marquard v. Marquard (Aug. 9, 2001), Franklin App. No. 00AP-1345. This court further held that the decision to use income averaging under R.C. 3113.215(B)(5)(h) is within the sound discretion of the trial court. Id.
 {¶ 95} Here, the trial court concluded that the magistrate's method of calculating appellant's income from his four corporations by averaging the income received in 1995, 1996, 1997 and 1998 more accurately accounted for the fluctuations in the corporations' income over the four-year period preceding trial than by using the methodology proposed by appellant, i.e., utilizing income figures from January 1, 1999 through August 31, 1999 and either annualizing those income figures or considering those figures in conjunction with the business income information available from the last four months of 1998. Based upon our review of the record, we cannot find that the trial court's decision was unreasonable, arbitrary, or unconscionable. Thus, we find no abuse of discretion. Appellant's ninth assignment of error is overruled.
 {¶ 96} As appellant's eighth assignment of error in case No. 03AP-494 and his first and second assignments of error in case No. 03AP-728 challenge the trial court's award of attorney fees to appellee, we will address them together.
 {¶ 97} Appellee filed her initial motion for attorney fees on December 6, 1999. The motion was heard in conjunction with the hearing on the motion for modification of child support. At the hearing, appellee submitted evidence (Exhibit No. 43) establishing that she incurred $28,666.23 in "attorney fees and expenses" from February 18, 1998 through January 3, 2000, which included $15,350 in fees generated by two separate attorneys, a $10,645.15 fee from her financial expert, Nesser, $1,361.08 in court reporting fees, a $360 fee paid to take the deposition of appellant's vocational expert, Rosenthal, and a $150 fee from Frederick Meister, who testified as an expert witness as to the necessity and reasonableness of the attorney fees and expenses incurred.[2] Appellee testified that all the bills submitted into evidence accurately represented the time spent on her case and the hourly rates charged. Appellee further testified that through January 3, 2000, she had paid over $24,000 toward the bills, the bulk of which came from her savings.
 {¶ 98} Meister testified that the attorneys' hourly rate, the work performed, and the number of hours billed for that work was reasonable under the facts and circumstances of the case. Meister further testified that the fees paid for court reporting services and to take Rosenthal's deposition were reasonable. As to the fees charged by Nesser, the magistrate determined that Meister was qualified to opine only as to the reasonableness of Nesser's hourly rate, but not to the reasonableness of the overall fee. Thereafter, Meister proferred testimony, out of the hearing of the magistrate, that Nesser's overall charge was reasonable.
 {¶ 99} On January 31, 2000, counsel for appellee filed an affidavit averring that from January 3, 2000 through January 31, 2000, appellee incurred additional attorney fees of $7,550, additional fees from Nesser of $1,629.50, and additional fees from Meister of $600. Counsel attached copies of his own billing records as well as those of both Nesser and Meister. Counsel averred that his billings were accurate as to time spent, work performed, and expenses paid, and that he charged appellee an hourly rate of $125, as opposed to his normal hourly rate of $150.
 {¶ 100} Counsel for appellee filed a supplemental affidavit on February 7, 2000, stating that since the filing of the last affidavit, appellee had incurred additional attorney fees of $817.90. Counsel attached a copy of his billing record.
 {¶ 101} The magistrate determined that appellee had incurred attorney fees, expert fees and costs totaling $39,534.60. In support of this finding, the magistrate referenced Exhibit No. 43 and the affidavits filed by counsel for appellee. Citing the disparity in the parties' adjusted gross incomes, appellant's sizeable liquid assets, and appellant's substantial increase in income since 1992, the magistrate found that appellant had the ability to pay a reasonable amount of appellee's attorney fees. The magistrate further found that appellant unreasonably resisted the modification of child support by taking the position that his child support obligation should be reduced to a deviated amount of $0 when an increase of almost $1,200 per month was warranted, and that a large cost of the litigation was due to appellant's actions. The magistrate further found that appellee had limited assets, had depleted her savings to fund the litigation, and was forced to hire experts at a cost of over $13,000 to evaluate appellant's voluminous financial information and to testify as to the reasonableness of appellee's attorney fees. The magistrate determined that without an award of attorney fees, appellee would in effect be forced to use the increase in child support to pay her attorney fees. Accordingly, the magistrate recommended that appellant pay $28,000 toward appellee's attorney fees and expenses.
 {¶ 102} Appellant filed objections to the award of attorney fees. In overruling the objections, the trial court found that the record supported the magistrate's findings as to appellant's ability to pay appellee's attorney fees and expenses, appellee's inability to protect her interests and fully litigate her rights without the award of attorney fees, and the reasonableness of the fees.
 {¶ 103} R.C. 3105.18(H) provides that a trial court may award reasonable attorney fees during any stage of a domestic relations proceeding, including any proceeding arising from a motion to modify a prior order or decree, if it determines that the other party has the ability to pay the attorney fees that the court awards. In determining whether to make an award, the court "shall determine whether either party will be prevented from fully litigating that party's rights and adequately protecting that party's interests if it does not award reasonable attorney's fees."
 {¶ 104} Thus, in order for a trial court to award a party attorney fees under R.C. 3105.18(H), it must find that: (1) the other party has the ability to pay them, (2) the party seeking the fees needs them to fully litigate his or her rights and adequately protect his or her interests, and (3) the fees requested are reasonable. Myer v. Myer (Aug. 13, 1996), Franklin App. No. 96APF01-31. The party requesting attorney fees bears the burden of establishing the reasonableness of those fees. Shaffer v. Shaffer (1996), 109 Ohio App.3d 205, 214. An award of attorney fees is within the sound discretion of the trial court and will not be disturbed absent an abuse of that discretion. Id.
 {¶ 105} Appellant first argues that the trial court failed to address the requirement in R.C. 3105.18(H) as to whether appellee would be prevented from fully litigating her rights and adequately protecting her interests if it did not award attorney fees. Appellant points out that appellee has a personal estate valued at $150,000 to $200,000, a home worth approximately $250,000, imputed income of $45,000, and a new husband with an annual income of approximately $81,000.
 {¶ 106} A review of the decisions by both the magistrate and the trial court reveals that neither made a specific finding as to whether appellee would be prevented from fully litigating her rights and adequately protecting her interests if the court did not award attorney fees. However, this court has held that "a trial court's failure to recite the exact language of R.C.3105.18(H) is not reversible error if the record supports the trial court's determination." Hess v. Reidel-Hess,153 Ohio App.3d 337, 2003-Ohio-3912, at ¶ 11.
 {¶ 107} This court has also held that, even if the party seeking attorney fees is financially able to pay the fees, the court may award attorney fees if the other party used tactics that prolonged the litigation. Id. at ¶ 12. This is so because when unnecessary attorney fees are incurred due to the conduct of the other party, the party seeking fees is "prevented from adequately protecting her interests." Id., quoting Fraiberg v.Fraiberg (Dec. 3, 1998), Cuyahoga App. No. 73321.
 {¶ 108} Here, the record supports the award of attorney fees when considering whether appellee would be prevented from fully litigating her rights and adequately protecting her interests if the court did not award attorney fees. The magistrate found that appellee had limited assets and depleted her savings to fund the litigation. The magistrate further found that an award of attorney fees was appropriate because much of the cost of the litigation was due to appellant's actions. The trier of fact is in the best position to observe the course of the litigation and determine whether appellant's conduct relating to that litigation had unreasonably increased appellee's attorney fees. Bahgat v.Bahgat (Mar. 31, 1998), Franklin App. No. 97APF04-533; Farleyv. Farley (Aug. 31, 2000), Franklin App. No. 99AP-1103 (a trial court is in a far better position than is a reviewing court to ascertain the extent to which one party's conduct contributes to prolonged litigation and consequently causes higher fees for the other party). Further, even if we were to accept appellee's propositions, there is still a basis for the trial court's award of fees considering appellant's significantly higher earning potential as long as he retains control of the corporations.
 {¶ 109} Appellant also contends that appellee failed to establish that her attorney fees were reasonable. As we have previously noted, appellee's expert, Meister, opined that the attorney fees set forth as part of Exhibit No. 43 were reasonable. Appellant contends that no weight should be afforded Meister's testimony. We decline the invitation to substitute our judgment for that of the magistrate concerning Meister's credibility or the weight to be afforded his testimony. It is well-established that a trial court, particularly a domestic relations court, is in the best position to determine the credibility of witnesses. See Hunt v. Hunt (1989),63 Ohio App.3d 178.
 {¶ 110} Further, even if we were to disregard Meister's testimony, other evidence supports a finding of reasonableness. Appellee testified that all the bills submitted into evidence accurately represented the time spent on her case and the hourly rates charged. Further, as we have previously noted, Exhibit No. 43 includes a detailed accounting of the work performed by appellee's attorneys. In Ward v. Ward (June 18, 1985), Franklin App. No. 85AP-61, this court recognized that "[t]he trial court is able to evaluate, in a large measure, the work performed by an attorney in a domestic relations case by merely looking at the record before the court." The Ward court further held that a trial court in such circumstances can use its own knowledge and experience in determining the necessity and reasonableness of attorney fees. See, also, Goode v. Goode (1991),70 Ohio App.3d 125, 134.
 {¶ 111} Finally, even if appellee had not provided testimonial or documentary evidence detailing the attorney fees incurred, this court has held that a trial court may award attorney fees in a domestic relations case in the absence of supporting evidence when the amount of work and time spent on the case is apparent. Marquard, supra. Here, the sheer volume of trial exhibits and financial records and the duration of the trial is evidence from which the trial court could plainly assess the reasonableness of fees relating to the action. Moreover, appellant does not argue that the amount of attorney fees was unreasonable. Again, given the disparity in the parties' incomes, we find no abuse of discretion.
 {¶ 112} Appellant next contends that the trial court improperly ordered him to pay appellee's expert witness fees. Although the magistrate did not expressly state that the award of attorney fees included expert witness fees, we find that the magistrate's discussion regarding the $13,000 appellee spent on experts to evaluate appellant's financial information and to testify as to reasonableness of her attorney fees certainly implies that the award included both Nesser's and Meister's fees. Appellant argues that R.C. 3105.18(H) does not authorize such an award. We disagree.
 {¶ 113} R.C. 3105.18(H) directs a trial court to determine whether a party would be prevented from fully litigating his or her rights and protecting his or her interests without an award of attorney fees. We find that the legislature's concern that a party be able to fully litigate his or her rights and protect his or her interests encompasses an award for expert witness fees incurred in cases such as this one, where neither appellee nor her attorneys could reasonably be expected to compile, evaluate and opine upon the voluminous financial materials pertaining to appellant's corporate enterprises. Had appellee not employed the services of expert witnesses in this case, she would clearly have been prevented from fully litigating her rights. Indeed, the magistrate found that appellee was "forced" to hire the experts to evaluate appellant's financial information and to testify as to the reasonableness of the attorney fees.
 {¶ 114} While there is no case law directly on point, we find the following cases instructive. In Marquardt v. Marquardt
(Feb. 9, 1993), Franklin App. No. 92AP-1318, this court implicitly included expert witness fees with attorney fees in a domestic relations case. In denying an appeal of a $2,500 attorney fee award, this court cited the exclusion of expert witness fees, "a necessary witness under the circumstances," as a reason why the appellant was fortunate not to be assessed a higher award. This court stated that "[u]nder the circumstances, the trial court would have been well within its discretion in awarding more than $2,500 in attorney's fees." Id.
 {¶ 115} Further, in Brown v. Brown (Dec. 2, 1993), Franklin App. No. 93AP-634, the appellant claimed that she should have been awarded attorney fees and expert witness fees. This court did not expressly state that expert witness fees could not be awarded under R.C. 3105.18(H). Rather, this court stated that it could not find an abuse of discretion in the trial court's decision to hold the appellant responsible for her own attorney fees and expert witness fees.
 {¶ 116} Appellant further contends that the trial court improperly awarded attorney fees and expert witness fees incurred prior to the time appellee filed her motion requesting fees. In support of his argument, appellant relies on Seagraves v.Seagraves (1997), 125 Ohio App.3d 98, wherein it was held that it is improper for a court to award fees incurred prior to the filing of a motion for fees. Id. The court explained:
Our holding is based upon the premise that the party against whom relief, in this instance an award of fees, is sought is entitled to timely notice of the intent to seek such relief. Without notice, we conclude that it would be unfair to require a party to pay for fees which may, as is the case here, have been incurred by the other party over a period of years. However, once notice of the intent to seek attorney fees is given, the party against whom the motion is made acts at his own risk if he continues to engage in protracted litigation.
Id. at 102.
 {¶ 117} The Seagraves court stressed that its decision did not mean that attorney fees were improper. Rather, the court remanded the case to the trial court for a determination of the amount of fees and expenses incurred after the motion was filed.
 {¶ 118} We adopt the reasoning employed by the court inSeagraves. Here, the evidence established that appellee began incurring attorney fees as early as February 1998 in conjunction with her motion to modify child support. Appellee filed the motion to modify in March 1998 and did not include a request for attorney fees therein. Appellee continued to incur fees during the entire period prior to the December 6, 1999 filing of her motion for attorney fees. Until that point, appellant had no notice that appellant intended to seek attorney fees. As did theSeagraves court, we conclude that it would be unfair to require appellant to pay for fees incurred by appellee prior to the time he was put on notice that fees could be assessed against him. However, in awarding appellee $28,000 in attorney fees, neither the magistrate's nor the trial court's decisions specify the time period for which fees were assessed. Under these circumstances, we follow the procedure employed by the Seagraves court and remand the case to the trial court for consideration of a proper award of attorney fees and expert witness fees, if any. Appellant's eighth assignment of error is sustained in part and overruled in part.
 {¶ 119} We now turn to appellant's assignment of error in case No. 03AP-728. In his first and second assignments of error, appellant contends that the trial court erred in awarding appellee additional attorney fees of $10,000.
 {¶ 120} On May 4, 2001, appellee filed a motion requesting an award of attorney fees incurred in preparing her response to appellant's objections to the first magistrate's decision. A hearing on the motion was held on October 10, 2001, at which appellee presented evidence (Exhibit No. 1) establishing that she incurred attorney fees of $10,092 related to the preparation of her response to appellant's 230-page objections to the magistrate's first decision. Exhibit No. 1 included a detailed, itemized accounting of the work performed by counsel for appellee from September 26, 2000 through July 16, 2001. Appellee testified that counsel's hourly rate of $125 was less than his customary hourly rate of $150, that the billings accurately represented the work performed by counsel, and that the fees incurred were reasonable and necessary in the matter. Appellee testified that she had already paid counsel $9,587.50 and that the funds to pay the bills were derived in equal parts from her husband's income tax return and her savings account. Appellant stipulated that he has the ability to pay appellee's attorney fees.
 {¶ 121} In its June 17, 2003 decision and entry, the trial court determined that the attorney fees incurred by appellee were reasonable and appropriate, that appellant had the ability to pay the fees, and that appellee would be unable to protect her interests and fully litigate her rights without the award of attorney fees.
 {¶ 122} Appellant asserts that the trial court erred in finding that appellee was unable to protect her interests and fully litigate her rights without an award of attorney fees because appellee paid nearly all of her attorney fees, had participated fully in the litigation, and held assets in excess of $100,000.
 {¶ 123} Appellee's payment of her attorney fees and her financial resources do not disqualify her from an award of fees. In Schultz, at 725, this court found no abuse of discretion in an award of nearly half of the wife's attorney fees even though the wife had income available to pay fees and had received an $80,000 property settlement and a $2,000 per month child support modification award.
 {¶ 124} Further, in Farley, supra, this court rejected an argument that a party who had paid the bulk of her attorney fees and received significant financial awards in the divorce had not been prevented from protecting her rights and there should not be an award of attorney fees. This court noted that there is "a basis for the trial court's award of fees considering Mr. Farley's significantly higher earning potential." Here, there is a disparity in the earning abilities and assets of the parties that makes appellant better able to bear the burden of attorney fees. Appellant's first and second assignments of error are overruled.
 {¶ 125} By his third assignment of error, appellant contends that the trial court erred in dismissing his Civ.R. 60(B) motion.
 {¶ 126} On August 5, 2002, appellant filed a motion requesting that the trial court declare former R.C.3113.215(B)(6)(a) unconstitutional as applied in equal time shared parenting cases on the following two bases: (1) the statute requires the court to presume that only one parent must pay child support, in violation of the Equal Protection Clause of the United States and Ohio Constitutions; and (2) the statute is unconstitutionally vague, in violation of the Due Process Clause of the United States Constitution.
 {¶ 127} The trial court filed a decision and judgment entry on April 23, 2003, dismissing appellant's motion for lack of jurisdiction on the ground that appellant failed to serve upon the Ohio Attorney General a copy of the motion as required by R.C. 2721.12(A).
 {¶ 128} On May 9, 2003, appellant filed a motion for relief from judgment pursuant to Civ.R. 60(B). In that motion, appellant maintained that he was entitled to relief under Civ.R. 60(B)(1), which provides that a final judgment can be vacated when a mistake has occurred. Specifically, appellant argued that relief should be granted because the trial court made a mistake in dismissing his motion, as he had properly served it on the Attorney General. In support of his argument, appellant attached photocopies of (1) a letter he sent by regular U.S. mail to the Attorney General on August 2, 2002, (2) his request for certified mail service on the Attorney General filed through the Clerk of Court on August 5, 2002, and his instructions for service, (3) the August 12, 2002 return receipt signed by the Attorney General, and (4) an August 12, 2002 letter from the Attorney General stating it elected not to intervene in the litigation at that time.
 {¶ 129} By decision and entry filed June 17, 2003, the trial court dismissed appellant's Civ.R. 60(B) motion on the ground that he failed to demonstrate that he has a meritorious claim or defense to present if relief is granted. In particular, the trial court determined that notwithstanding the documents submitted by appellant with his Civ.R. 60(B) motion, appellant had not properly notified the court of service of his motion upon the Attorney General through a certificate of service accompanying his motion as required by Civ.R. 5.
 {¶ 130} Appellant mistakenly interpreted Civ.R. 60(B)(1) as providing a means for him to contest the validity of the trial court's analysis in dismissing his motion. However, a motion for relief from judgment cannot be predicated upon the argument that the trial court made a mistake in rendering its decision.Chester Twp. v. Fraternal Order of Police (1995),102 Ohio App.3d 404, 408. The type of mistake contemplated by Civ.R. 60(B)(1) is a mistake by a party or his legal representative, not a mistake by the trial court in its legal analysis. Antonopoulosv. Eisner (1972), 30 Ohio App.2d 187; Carrabine v. Brown (Aug. 13, 1993), Geauga App. No. 92-G-1736. In order to contest the trial court's judgment dismissing his motion, appellant was required to directly appeal that judgment. Civ.R. 60(B) relief cannot be employed as a substitute for an appeal. Doe v.Trumbull Cty. Children Services Bd. (1986), 28 Ohio St.3d 128,131. Given that appellant's Civ.R. 60(B) motion did not set forth a valid basis for vacating the court's judgment, the trial court did not err in denying it.
 {¶ 131} Here, however, appellant, in addition to filing a Civ.R. 60(B) motion, timely appealed the trial court's judgment dismissing appellant's motion. Thus, the issue is properly before us.
 {¶ 132} This court would agree that the trial court erred in dismissing appellant's motion challenging the constitutionality of R.C. 3113.215(B)(6)(a). The trial court dismissed the motion for lack of jurisdiction on the ground that appellant failed to serve upon the Ohio Attorney General a copy of the motion as required by R.C. 2721.12(A), which provides:
Subject to division (B) of this section, when declaratory relief is sought under this chapter in an action or proceeding, all persons who have or claim any interest that would be affected by the declaration shall be made parties to the action or proceeding. Except as provided in division (B) of this section, a declaration shall not prejudice the rights of persons who are not made parties to the action or proceeding. In any action or proceeding that involves the validity of a municipal ordinance or franchise, the municipal corporation shall be made a party and shall be heard, and, if any statute or the ordinance or franchise is alleged to be unconstitutional, the attorney general also shall be served with a copy of the complaint in the action or proceeding and shall be heard. In any action or proceeding that involves the validity of a township resolution, the township shall be made a party and shall be heard.
 {¶ 133} The trial court cited Cicco v. Stockmaster (2000),89 Ohio St.3d 95 as authority for its action. In construing former R.C. 2721.12,[3] Cicco held at the syllabus: "A party who is challenging the constitutionality of a statute must assert the claim in the complaint (or other initial pleading) or an amendment thereto, and must serve the pleading upon the Attorney General in accordance with methods set forth in Civ.R. 4.1 in order to vest a trial court with jurisdiction under former R.C. 2721.12."
 {¶ 134} Thereafter, in George Shima Buick, Inc. v. Ferencak
(2001), 91 Ohio St.3d 1211, the Supreme Court of Ohio broadenedCicco's service requirement to include a situation where the constitutionality of a statute was raised in a motion to dismiss filed in an ordinary civil action. In her concurring opinion, Justice Lundberg Stratton stated:
Each time a party legally challenges the constitutionality of a state statute, the party is, in essence, requesting the court to enter a declaratory judgment that the statute is unconstitutional. Even if the challenge is not initially raised in a "complaint for declaratory judgment" pursuant to R.C.2721.12, the court must enter a formal judgment deciding the issue of constitutionality regardless of when the issue is raised. Such a decision is, in fact, a declaratory judgment.
Id. at 1212.
 {¶ 135} Together, Cicco and Ferencak stood for the proposition that a court lacks jurisdiction to consider the constitutionality of a statute, whether raised in a pleading or motion, unless the Attorney General is properly notified. However, the Ohio Supreme Court in Cleveland Bar Assoc. v.Picklo, 96 Ohio St.3d 195, 2002-Ohio-3995, determined that it applied Cicco "too zealously" in Ferencak. Picklo, at ¶ 6. The court thus overruled Ferencak, stating:
 Cicco recognizes that R.C. 2721.12 imposes a notice requirement on parties contesting the constitutionality of a statute in a declaratory judgment action filed pursuant to R.C. Chapter 2721. That statute requires that the Attorney General be notified in every such action by service of the pleading in accordance with Civ.R. 4.1. Neither Ferencak nor this case is a declaratory judgment action filed pursuant to R.C. Chapter 2721. Ferencak began as a small claims action to recover damages stemming from a customer's decision to stop payment on a check for automobile repairs. And this case is an action to enforce our constitutional responsibility to oversee the practice of law in this state. Cicco, therefore, does not require service on the Attorney General as a prerequisite to invoking our jurisdiction. * * *
Id. at ¶ 7.
 {¶ 136} Thus, pursuant to Picklo, Cicco's service requirement applies only when the constitutionality of a statute is raised in a declaratory judgment action and not when the issue is raised in a motion filed in an ordinary civil action. SeeFerencak, at 1213 (Cook, J., dissenting) (stating that R.C.2721.12 and its service requirement apply only in declaratory judgment actions).
 {¶ 137} In this case, the action initially arose in 1992 when appellee filed an ordinary civil complaint for divorce. At that time, neither party requested a declaratory judgment regarding the constitutionality of R.C. 3113.215(B)(6)(a). The trial court granted the parties a divorce and, among other things, determined issues related to child support. Thereafter, both appellee and appellant filed motions to modify child support. During the course of the proceedings on the motions to modify child support, appellant filed the motion regarding the constitutionality of R.C. 3113.215(B)(6)(a). Because this action originated as an ordinary civil action containing no request for declaratory judgment, the service requirement of R.C. 2721.12(A) does not apply, and the trial court had jurisdiction to consider the constitutionality of R.C. 3113.215(B)(6)(a). Accordingly, the trial court erred in dismissing appellant's motion on jurisdictional grounds and the matter must be returned to the trial court for consideration of appellant's constitutional challenge. Appellant's third assignment of error is sustained.
 {¶ 138} For the foregoing reasons, in case No. 03AP-494, appellant's first, second, third, fourth, sixth, seventh, and ninth assignments of error are overruled, and his fifth and eighth assignments of error are sustained in part and overruled in part; in case No. 03-728, appellant's first and second assignments of error are overruled and his third assignment of error is sustained. Thus, the judgments of the Franklin County Court of Common Pleas, Division of Domestic Relations, are hereby affirmed in part and reversed in part, and this matter is remanded to that court for further proceedings in accordance with law and consistent with this opinion.
Judgments affirmed in part, reversed in part case remandedwith instructions.
Klatt and Watson, JJ., concur.
[1] At the time of the hearing, R.C. 3113.215 governed the procedures a trial court must follow when calculating a child support award. While we acknowledge that R.C. 3113.215 was repealed, effective March 22, 2001, and replaced by R.C. 3119.01
et seq., we will review appellant's assignments of error pursuant to R.C. 3113.215, which was the statute in effect at the time of the hearing.
[2] The $28,633.23 also included an $800 fee paid to the guardian ad litem which is not the subject of this assignment of error.
[3] Former R.C. 2721.12 provided: "When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration. No declaration shall prejudice the rights of persons not parties to the proceeding. In any proceeding which involves the validity of a municipal ordinance or franchise, the municipal corporation shall be made a party and shall be heard, and if any statute or the ordinance or franchise is alleged to be unconstitutional, the attorney general shall also be served with a copy of the proceeding and shall be heard. In any proceeding which involves the validity of a township resolution, the township shall be made a party and shall be heard." The statute was amended to its current version on September 24, 1999.