**HESS, Appellant and Cross–Appellee,**

v.

**RIEDEL–HESS, Appellee and Cross–Appellant.**

[Cite as *Hess v. Riedel–Hess,* 153 Ohio App.3d 337, 2003-Ohio-3912.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 02AP–1071.

Decided July 22, 2003.

338

Mills & Mills, Luther J. Mills and Stewart E. Roberts; Bernard G. Lancione Co., L.P.A., and Bernard G. Lancione, for appellant and cross-appellee.

Bates & Hasselback, L.L.P., and David G. Hasselback, for appellee and cross-appellant.

Brown, Judge.

{¶ 1} Bradley D. Hess, plaintiff-appellant and cross-appellee, appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, rendered September 3, 2002. Kimberly S. Riedel–Hess, defendant-appellee and cross-appellant, has filed a cross-appeal.

{¶ 2} Appellant and appellee were married in April 1997, and have no children as issue of the marriage. Appellant filed his complaint for divorce in April 2001, and requested spousal support. The case came on for trial on April 24, 2002. On September 3, 2002, the trial court issued a judgment entry/decree of divorce. In the judgment, the trial court, among other things, valued and divided marital property, denied appellant's request for spousal support, and awarded attorney fees to appellee. Appellant appeals from the trial court's judgment, asserting the following three assignments of error:

{¶ 3} "I. The trial court committed error prejudicial to the appellant by awarding the appellee $5,000 in attorney's fees without complying with the statute, and partly because appellant did not withdraw an issue based upon the court's indication at pretrial of how it would rule on said issue.

{¶ 4} "II. The trial court committed error prejudicial to appellant in its evaluation of the parties' personal property, division of certain marital assets, and assignment of values to the items kept by the parties, against the manifest weight of the evidence.

{¶ 5} "III. The trial court committed error prejudicial to appellant by holding against him on the issue of spousal support."

{¶ 6} Appellee presents the following assignment of error in her cross-appeal:

{¶ 7} "The court abused its discretion by not awarding the defendant-appellee and cross-appellant the full amount of attorney fees incurred as a result of the unreasonable actions and position of the plaintiff-appellant and cross-appellee."

{¶ 8} Appellant argues in his first assignment of error that the trial court erred by awarding appellee $5,000 in attorney fees without complying with R.C. 3105.18(H), which provides:

{¶ 9} "In divorce or legal separation proceedings, the court may award reasonable attorney's fees to either party at any stage of the proceedings, including, but not limited to, any appeal, any proceeding arising from a motion to modify a prior order or decree, and any proceeding to enforce a prior order or decree, if it determines that the other party has the ability to pay the attorney's fees that the court awards. When the court determines whether to award reasonable attorney's fees to any party pursuant to this division, it shall deter-

mine whether either party will be prevented from fully litigating that party's rights and adequately protecting that party's interests if it does not award reasonable attorney's fees."

{¶ 10} Specifically, appellant first asserts that the trial court failed to address the requirement in R.C. 3105.18(H) as to whether appellee would be prevented from fully litigating her rights and adequately protecting her interests if it did not award attorney fees. Appellant points out that appellee has a $95,000 annual salary and was awarded a large share of the investments and property.

{¶ 11} An award of attorney fees lies within the sound discretion of the trial court. *Rand v. Rand* (1985), 18 Ohio St.3d 356, 359, 18 OBR 415, 481 N.E.2d 609. A review of the trial court's transcript and decision reveals that the court did not specifically make a finding as to whether appellee would be prevented from fully litigating her rights and adequately protecting her interests if it did not award attorney fees. However, a trial court's failure to recite the exact language of R.C. 3105.18(H) is not reversible error if the record supports the trial court's determination. *Trott v. Trott* (Mar. 14, 2002), Franklin App. No. 01AP–852, 2002 WL 392286, citing *Curtis v. Curtis* (2000), 140 Ohio App.3d 812, 815, 749 N.E.2d 772; *Mays v. Mays* (Oct. 12, 2001), Miami App. No. 2000–CA–54, 2001 WL 1219345.

{¶ 12} Further, it has been held that, even if a spouse is financially able to pay attorney fees, the court may award attorney fees if the other spouse used tactics that prolonged the litigation. See *Pournaras v. Pournaras* (June 26, 1986), Cuyahoga App. No. 50782, 1986 WL 7297; *Matyas v. Matyas* (Jan. 17, 1985), Cuyahoga App. No. 48645, 1985 WL 7444. Although these cases were decided before R.C. 3105.18(H) was in effect, the cases are not contrary to R.C. 3105.18(H) because, when unnecessary attorney fees are incurred due to the conduct of the other spouse, the spouse is "prevented from adequately protecting her interests." *Fraiberg v. Fraiberg* (Dec. 3, 1998), Cuyahoga App. No. 73321, 1998 WL 842077. Further, we have before held that an award of attorney fees may be predicated upon one party intentionally causing the other party to incur unnecessary, substantial fees. See *Trott*, supra, citing *Kelly–Doley v. Doley* (Mar. 12, 1999), Lake App. No. 96–L–217, 1999 WL 262165; see, also, *Cimperman v. Cimperman*, Cuyahoga App. No. 80807, 2003-Ohio-869, 2003 WL 547814.

{¶ 13} In the present case, the record supports the award of attorney fees when considering whether appellee would be prevented from fully litigating her rights and adequately protecting her interests if it did not award attorney fees. Although appellee was awarded property and investments that would have enabled her to pay her own attorney fees and related expenses, she incurred additional attorney fees and certain expenses directly attributable to appellant's conduct.

{¶ 14} The trial court found that an award of attorney fees was warranted because appellant engaged in the following unreasonable actions during the case that caused appellee to incur additional attorney fees: (1) appellant continued to prosecute his claim for spousal support despite the court having twice expressed during pretrial conferences that spousal support was not warranted in the present case, (2) appellant unreasonably caused the closing of the sale of the marital residence to last for six hours, for which appellee had to pay attorney fees, and (3) appellee had to contact her attorney in order to get certain utility bills paid by appellant.

{¶ 15} With regard to the spousal support issue, we find no abuse of discretion. Although appellee claims that the trial judge "prejudged" the spousal support issue during the pretrial conferences without the submission of proper evidence, we find that the trial court did not abuse its discretion in making this finding. The trial court had the parties' Loc.D.R. 17 assets and liabilities statements; appellant's sworn narrative affidavit in support of temporary orders, in which appellant specifically analyzed spousal support pursuant to the statutory factors; appellant's sworn supplemental affidavit in support of temporary orders; appellee's answers to appellant's interrogatories and attached affidavit; the parties' pretrial statements; and the oral representations made by each party's counsel during both pretrial conferences. Certainly, the trial judge was permitted to give her opinions on the issue of spousal support, and she did not "prejudge" the issue. Civ.R. 16 permits the court to conduct pretrial conferences to explore the possibility of settlement of the action, simplify the issues, and discuss other matters as may aid in the disposition of the action. The trial court attempted to narrow the issues for trial and limit the attorney fees both parties would be forced to incur as a result of appellant's pursuit of spousal support.

{¶ 16} With regard to the closing on the sale of the marital residence, appellee testified that the parties and their attorneys went to the title agency for the closing. The parties had previously signed an agreement that, when they closed on the house, they would both vacate the house within 48 hours. However, appellee testified that appellant and his attorney arrived at the closing with a series of last-minute changes and agreements. She further stated that appellant suddenly indicated that he did not have enough time to move out and he needed two weeks. Appellee testified that these actions by appellant caused the closing to take six hours instead of the usual 30 to 60 minutes. She indicated that her attorney billed her for these six hours. Although appellant asserts that this evidence was insufficient, we disagree. Appellee's testimony, unrebutted by appellant, was sufficient for the trial court to rely upon. Although appellant claims in his appellate brief that the reason for the long delay was that funding for the house did not come through until the afternoon, he provides no citation to

evidence of such. Further, although he claims that appellee's testimony defies common sense, he failed to rebut appellee's claims during his own trial testimony. We also note that, with regard to the marital residence, the trial court's award of attorney fees was also based upon appellant's unwillingness to recognize appellee's full premarital interest, the length of time she owned the home prior to the marriage, and the work she and her family performed on the property. Therefore, the trial court had sufficient evidence to support this finding.

{¶ 17} With regard to the unpaid utility bills, the trial court found that appellant repeatedly failed to promptly pay such bills as he was required to do under the temporary orders. The court found that those actions resulted in appellee's having to seek the assistance of her attorney to secure payment of those bills, thereby increasing her attorney fees. At trial, appellee submitted two multipage exhibits regarding unpaid utility bills. Exhibit P included an April 8, 2002 Columbia Gas of Ohio bill that indicated that the balance from her previous bill for some period in March 2002, as well as her current-month charges, had not been paid as of April 8, 2002. Exhibit Q included a February 27, 2002 letter from Columbia Gas indicating that payment had not been received for the bill due on February 18, 2002. Appellee testified at trial that every time appellant failed to pay a bill, she had to go to her attorney to seek compliance. In his brief, appellant presents a counterargument; however, we fail to understand his explanation surrounding Exhibits P and Q. He states in his brief that the Columbia Gas bill in Exhibit P shows a credit of $200.13 paid March 5, 2002. However, our review of Exhibit P shows no credits whatsoever, indicates $198.46 past due from the previous bill, and does not even include any reference to March 5, 2002. Appellant then refers to the February 27, 2002 letter in Exhibit Q, apparently arguing that the credit in Exhibit P shows that he paid the amounts referred to in Exhibit Q. We fail to follow his argument, and we must reject it on that basis. We do note that the trial transcript suggests that the confusion in appellant's argument may be the result of a discrepancy between the trial exhibit and a copy of the exhibit given to appellant's counsel at trial. However, it seems from the transcript that the copy given to appellant's counsel at trial was incorrect. Regardless, we must find appellant's argument on this issue not well taken.

{¶ 18} Further, appellant argues that the February 27, 2002 city of Westerville account history statement in Exhibit Q shows that he made utility payments in November, December, and January, and the statement showing a balance due was a "snapshot" of the day after the February billing cycle ended on February 26, 2002. Although we agree that the statement is not indicative of a late payment for February, it does demonstrate that the January 30, 2002 bill, also part of Exhibit Q, was unpaid. The January 30, 2002 bill indicates that $82.13

was due on February 15, 2002. The city of Westerville account history statement indicates that, as of February 27, 2002, the $82.13 had not been paid. Therefore, we find appellant's arguments not well taken.

{¶ 19} In sum, even if the trial court did not make an express finding that appellee would be prevented from fully litigating her rights and adequately protecting her interests if it did not award reasonable attorney fees, the trial court had independent bases for awarding appellee partial attorney fees based on appellant's activities during the divorce proceedings and trial. See *Trott*. Although, as this court indicated in *Trott*, it would be better practice for a trial court to specifically use the statutory language, for the purposes of appellate review, we find that the record contains sufficient supporting evidence for the court's award. Appellant's first assignment of error is overruled.

{¶ 20} Appellant argues in his second assignment of error that the trial court erred in evaluating the parties' personal property, division of certain marital assets, and assignment of values to the items kept by the parties, against the manifest weight of the evidence. We generally review the overall appropriateness of the trial court's property division in divorce proceedings under an abuse-of-discretion standard. *Cherry v. Cherry* (1981), 66 Ohio St.2d 348, 20 O.O.3d 318, 421 N.E.2d 1293. In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 5 OBR 481, 450 N.E.2d 1140. Furthermore, a trial court's property division should be viewed as a whole in determining whether it has achieved an equitable and fair division. *Briganti v. Briganti* (1984), 9 Ohio St.3d 220, 222, 9 OBR 529, 459 N.E.2d 896. The trier of fact, as opposed to this court, is in a far better position to weigh the credibility of witnesses. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212.

·{¶ 21} Appellant first asserts that the trial court erred in awarding him a diamond pendant. Evidence presented at trial indicated that appellee purchased the pendant in January 2000 for $9,051.34 and then insured it for $12,000 based upon an appraisal appellee obtained January 27, 2000. At trial, appellant argued that it was worth $12,000, and appellee assigned it a fair market value of $7,500. Appellee testified at trial that appellant consistently complained about her purchase of the item, and if he really believed it was worth $12,000, she would give it to him for $7,500, and he would get a "bargain." Appellant testified that he had no interest in owning the pendant. Appellant now argues that because he never wanted the pendant and never requested it and because appellee chose to buy the piece and take it from the marital home when she left, he should not have been awarded the pendant. However, we cannot find that this was against the manifest weight of the evidence. The trial court was presented with widely

varying values of the pendant by the parties. In an attempt to find an equitable solution to the disparate values, the trial court assigned a fair market value that was $4,500 below what appellant believed the item was worth and awarded it to him. Consistent with appellee's argument, if appellant truly believed the item was worth $12,000, he received a considerable windfall by the trial court's award. Although appellant disagrees with the distribution, such disagreement does not amount to evidence of an abuse of discretion.

{¶ 22} With regard to the other jewelry owned by the parties, appellant first argues that the trial court erred in accepting appellee's version of the acquisition of the multistoned bracelet and tourmaline earrings with matching ring. Appellant argued that, when he went to Brazil in October 2000, he was given a list of several items he was supposed to buy for appellee using marital funds, including the multistoned bracelet and tourmaline earrings with matching ring. Appellant asserted that he gave the items to appellee immediately upon his return and that they were not treated as gifts by the parties. He contends that the jewelry, valued at $1,445, should be awarded to appellee. However, appellee testified that this jewelry was purchased for her as a gift for Christmas 2000. She stated that, although she had been somewhat interested in the multistone bracelet on a prior trip to Brazil, she had no desire to buy it and did not "particularly care for it." She testified that appellant showed her the jewelry when he returned from Brazil, but that she was very angry when appellant showed it to her because he told her that he had spent a lot of money on it. She stated that she did not want it. Appellee testified that appellant saved the bracelet and gave it to her as a Christmas present. She said that he immediately gave her the ring but that she had not asked for it. Appellant testified that appellee wanted him to purchase certain jewelry in Brazil but that the jewelry store did not have that piece. He testified that he bought her the bracelet because she had mentioned it when they were in Brazil previously, but he could not telephone her to ask her about it first because she was on a business trip at the time. He indicated that they argued about the bracelet when he returned. Appellant further testified that he never wrapped the jewelry, that he gave it to her immediately upon arriving home, and that they never treated the jewelry as gifts.

{¶ 23} A trial court's characterization of the assets as marital or separate property will not be disturbed on appeal absent an abuse of discretion. *Peck v. Peck* (1994), 96 Ohio App.3d 731, 734, 645 N.E.2d 1300. In determining whether the trial court abused its discretion, a reviewing court must view the property division in its entirety, consider the totality of the circumstances, and determine whether the property division reflects an unreasonable, arbitrary, or unconscionable decision. *Jelen v. Jelen* (1993), 86 Ohio App.3d 199, 620 N.E.2d 224. R.C.

3105.171(A)(6)(a)(vii) states that a gift of real or personal property made after marriage can be deemed separate property if proven by clear and convincing evidence to have been given to one spouse.

{¶ 24} In the present case, we find no abuse of discretion in finding that the jewelry was a gift to appellee in light of the totality of the circumstances. The trial court, as trier of fact, was in the best position to assess the credibility of each of the parties' testimony on this issue. Apparently, the trial court found appellee's testimony credible that the items were bought on appellant's own accord as a gift and were treated in such a way. Appellant's argument that appellee kept and wore the jewelry thereafter is irrelevant to whether the items were gifts in the first instance. We will not disturb the trial court's finding. This argument is without merit.

{¶ 25} Appellant next argues that his evidence with regard to the motor vehicles was more credible. Appellant first takes issue with the value appellee placed on her 1999 Honda Accord, which used by the trial court. Appellant asserts that he used the "Kelley Blue Book" to value the Accord at $22,150, while appellee used a mere "internet printout." Although it is not clear whether appellant's argument is based on authenticity, relevancy, hearsay, or credibility, we find that the trial court did not err in relying upon the evidence presented by appellee. Appellee used an average of the trade-in and retail values to arrive at a $17,175 quotation using the website of the National Automobile Dealer Association ("NADA"). The NADA handbook is a standard tool for determining the value of a vehicle. See, e.g., *Welsh v. Yoshida* (Apr. 19, 2002), Lake App. No. 2001–L–033, 2002 WL 603051; *Banning v. Banning* (June 28, 1996), Greene App. No. 95 CA 79, 1996 WL 354930, citing *Henry v. Serey* (1989), 46 Ohio App.3d 93, 546 N.E.2d 474, overruled in part on other grounds by *Dunn v. Westlake* (May 9, 1990), Hamilton App. No. C–880422, 1990 WL 59262; *Frey v. Trenor Motor Co.* (Aug. 25, 1995), Clark No. 94–CA–69, 1995 WL 502254. Insofar as appellant is objecting to the admissibility of the report, the trial court did not err in admitting into evidence the NADA appraisal guide from NADAguides.com in order to establish the value of appellee's vehicle. The exhibit was properly admitted pursuant to Evid.R. 803(17), which excludes from the hearsay rule "[m]arket quotations, tabulations, lists, directories, or other published compilations, generally used and relied upon by the public or by persons in particular occupations." NADA guidelines in print form and on the Internet are highly reliable and used widely by the general public. Further, a review of the record reveals that appellee testified that she recognized that the NADA guidelines submitted as evidence as the same values she had calculated herself on NADAguides.com. Appellee's testimony was sufficient to support a finding that the exhibit was what its proponent claimed it to be. Evid.R. 901(A), (B)(1). As to appellant's

argument that his "Kelley's Blue Book" value was more credible than the NADA value, we first note that appellant presented no documentary evidence showing that his determination was based on the "Kelley Blue Book." The only evidence that the "Kelley Blue Book" value was $22,150 was his testimony. Regardless, the credibility of the competing valuations was for the trial court to determine. Given that the opinions of appellant and appellee were both based upon generally credible sources, we cannot say that the trial court's decision to rely upon appellee's opinion based on the NADA value was against the manifest weight of the evidence. This argument is without merit.

{¶ 26} Likewise, we cannot say that the trial court erred in relying upon appellee's NADA guidelines to determine the value of appellant's Honda CR–250 motocross bike and 1995 Honda Civic. Appellant argues that his values were more accurate and credible because his values were based on actual appraisals by dealers. However, the trial court has broad discretion in determining the value of a marital asset. *James v. James* (1995), 101 Ohio App.3d 668, 681, 656 N.E.2d 399. Again, stressing that it is the trier of fact who assesses the credibility of the evidence, we cannot say that the trial court erred by accepting appellee's estimate of the value of each of these assets based upon NADA guidelines.

{¶ 27} Appellant also presents a somewhat unrefined argument regarding the parties' Heisey glass collection. Appellant contends that the testimony of appellee demonstrated that she had little understanding of the Heisey glass and was trying to charge him (as marital assets) for items that had been given to him as gifts from relatives. Although he does not explain his arguments any further and merely cites portions of the record to support these allegations, we find appellant's arguments all without merit, given our standard of review. The trial court had conflicting evidence on several issues surrounding the Heisey glass. Appellee contended that several items were given to both of them, while appellant contended that they were gifts given only to him personally by family members. Appellee also contended that several items were additional pieces left out of appellant's original appraisal list, while appellant contended that the pieces were either, in fact, included in the appraisal list or did not exist. With this conflicting evidence, the trial court was faced with determining which party was more credible. It chose to believe appellee on these issues. As explained above, this court, as an appellate court, is simply not in the same position as the trial court when judging credibility. This court's ability to judge credibility from a raw transcript pales in comparison to the ability of the trial court to judge credibility by seeing the parties' reactions, facial expression, gestures, and body language, and hearing the nuances in their voices. Therefore, we cannot find that the trial court erred in finding appellee's testimony more credible on these issues.

{¶ 28} Appellant also makes an argument regarding the parties' Bowflex machine. The trial court awarded appellee the Bowflex and valued it at $1,412. The trial court then subtracted $1,412 from appellee's award for the loan for the Bowflex. Appellant claims that it was error for the trial court to award appellee a deduction for that loan because appellee had already paid off that loan using $1,412 of marital income. The evidence on this item is scant. However, appellee did testify that, because the loan was in her name, she decided to take over the remaining payments. There is no other evidence in the record as to when appellee began making the payments on the Bowflex or, if and when the loan was paid off. Appellant presented no evidence on the issue and does not shed any further light on these issues in his brief. Given the sparse evidence in the record, we cannot disturb the trial court's determination regarding the Bowflex. For the foregoing reasons, appellant's second assignment of error is overruled.

{¶ 29} Appellant argues in his third assignment of error that the trial court erred in failing to award him spousal support. A trial court's decision concerning spousal support may be altered only if it constitutes an abuse of discretion. *Kunkle v. Kunkle* (1990), 51 Ohio St.3d 64, 67, 554 N.E.2d 83. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore*, supra, at 218, 5 OBR 481, 450 N.E.2d 1140. R.C. 3105.18(C)(1)(a) through (n) provide the factors that a trial court is to review in determining whether spousal support is appropriate and reasonable and in determining the nature, amount, terms of payment, and duration of spousal support. R.C. 3105.18(C)(1) provides as follows:

{¶ 30} "In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:

{¶ 31} "(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 * * * of the Revised Code;

{¶ 32} "(b) The relative earning abilities of the parties;

{¶ 33} "(c) The ages and the physical, mental, and emotional conditions of the parties;

{¶ 34} "(d) The retirement benefits of the parties;

{¶ 35} "(e) The duration of the marriage;

{¶ 36} "(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;

{¶ 37} "(g) The standard of living of the parties established during the marriage;

{¶ 38} "(h) The relative extent of education of the parties;

{¶ 39} "(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;

{¶ 40} "(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;

{¶ 41} "(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;

{¶ 42} "($l$) The tax consequences, for each party, of an award of spousal support;

{¶ 43} "(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;

{¶ 44} "(n) Any other factor that the court expressly finds to be relevant and equitable."

{¶ 45} In the present case, the trial court specifically addressed the factors in R.C. 3105.18(C)(1). Appellant argues that several factors weigh "heavily" in favor of an award of spousal support. Although appellant specifically cites factors (a), (b), (c), (d), (g), (h), (m), and (n) as being those that weigh "heavily" in his favor, he does not address each separately. We have reviewed the record, the factors in R.C. 3105.18(C)(1), and appellant's arguments, and find that the trial court did not err in finding spousal support inappropriate.

{¶ 46} Appellant's main argument seems to be that he quit his accounting business to accompany appellee to Brazil for 21 months beginning in 1997 and has now been "forced" to take a maintenance position earning $37,000 annually, while his wife earns $95,000 annually. However, as the trial court pointed out, appellant has a bachelor's degree, has his apartment paid for as part of his employment, and has an annual after-tax income that exceeds his stated annual expenses by approximately $4,000. Although admittedly appellant's budget presented to the trial court lacks some reliability given appellant's admission that the budget was incomplete and he had "many miscellaneous" expenses, these miscellaneous expenses apparently include various debts that are not overwhelm-

ing. Appellant was awarded nearly $100,000 in martial assets, most of which are liquid and could be used to pay these debts. Further, appellant's argument that his earning potential/capacity has been essentially "capped" by going to Brazil with appellee is unpersuasive. He is still relatively young, 42 years old, and in good health, and a temporarily poor job market hardly qualifies as an event that would abruptly "cap" his earning potential indefinitely. In addition, he lived in Brazil for only a little more than one and one-half years, which is a rather short period to essentially destroy any future career as an accountant or his future earning capacity. Appellant also asserts that he now must live in a modest three-room apartment instead of the nice home in Westerville where the couple lived. Although having to reside in a smaller home could be a factor for awarding spousal support under (g), the differences between appellant's marital and post-marital living conditions are not so dramatic as to be very compelling. Appellant also admits that his accounting practice was struggling prior to moving to Brazil with appellee, thereby lessening the impact of the "sacrifice" he had to make when he agreed to move to Brazil. In addition, although appellant emphasizes that he has been relegated to being a maintenance person at a small private school, his current income is greater than the income he earned at any of his previous accounting positions.

{¶ 47} Further, although appellant points out that he cannot afford to eat out or travel "worldwide," as he did when he was married, these are not compelling reasons to award spousal support under the overall circumstances of this case. In addition, the parties separated after four years and were married for approximately five years, which is a short-duration marriage, lessening the appropriateness of spousal support. We also note that appellant never presented the trial court with an amount or duration of spousal support that he believed would be appropriate, apparently relying solely upon the trial court to fashion an award. In sum, the trial court is given wide latitude in determining spousal support, and we do not find an abuse of discretion in failing to award appellant spousal support. Therefore, appellant's third assignment of error is overruled.

{¶ 48} Appellee argues in her sole cross-assignment of error that the trial court abused its discretion by not awarding her the full amount of attorney fees incurred as a result of the unreasonable actions and positions of appellant. The trial court found that $9,414 in attorney fees and expenses had been incurred by appellee as a result of the unreasonable actions and positions advanced by appellant during the pendency of the case. The trial court found that an award of attorney fees was warranted because (1) appellant continued to prosecute his claim for spousal support despite the court having twice expressed during pretrial conferences that spousal support was not warranted in the present case, (2) appellant unreasonably caused the closing of the sale of the marital residence to

last for six hours, for which appellee had to pay attorney fees, and (3) appellee had to contact her attorney in order to get certain utility bills paid by appellant. The trial court then ordered that appellant pay $5,000 of appellee's $9,414 in attorney fees and expenses.

{¶ 49} Appellee now argues that the trial court erred in awarding only $5,000 instead of the full $9,414. As explained above, it is within the sound discretion of the trial court to award attorney fees in a divorce action, and a decision not to award attorney fees will be reversed only upon a showing of an abuse of that discretion. *Dunbar v. Dunbar* (1994), 68 Ohio St.3d 369, 371, 627 N.E.2d 532. The $5,000 awarded by the trial court is approximately half of the total $9,414 in attorney fees made necessary by appellant's conduct. It was certainly within the trial court's discretion to order that appellant be responsible for half of the fees and that appellee be responsible for the other half of her own fees. We find no abuse of discretion. Appellee's cross-assignment of error is overruled.

{¶ 50} Accordingly, appellant's three assignments of error are overruled, appellee's cross-assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, is affirmed.

Judgment affirmed.

LAZARUS and PEGGY BRYANT, JJ., concur.