JOURNAL ENTRY and OPINION
{¶ 1} In this consolidated appeal, defendants-appellants Robert M. Temple ("Temple")[1] and Jimmy C. Chisum ("Chisum"),[2] pro se, appeal various decisions of the Cuyahoga County Court of Common Pleas, Domestic Relations Division. For the reasons stated below, we affirm.
 {¶ 2} The facts adduced from the record are as follows: On or about March 16, 1981, plaintiff-appellee Catherine Temple ("Catherine") and Temple were married.[3] Temple denied the existence of a marriage, but the court found by clear and convincing evidence that the two were married. The court found that the parties resided in the same home, furnished their home together, had sexual relations, and presented themselves as husband and wife in the community. One child was born as issue of the marriage, Robert Temple III, born March 27, 1989 ("Robby").
 {¶ 3} The couple owned five parcels of real estate in Bristolville and Farmington Township, Ohio. Their primary residence was on Stroup Hickox Road, Bristolville. The court found the fair market value of the properties to be $552,000. While on the property, the couple ran a veterinary clinic. Temple was also engaged in the business of veterinary services and the selling of exotic livestock such as llamas and birds.
 {¶ 4} Sometime in 1985, various trust agreements were allegedly entered into.[4] Chisum acted as the "trustee" of the trusts. Temple placed all of his possessions into the trusts, including his home and other buildings located on the properties; all furniture and furnishings; income from all sources; bank accounts; gold and silver coins; paintings; a collection of llamas and exotic birds; cars; tractors; guns; clothes; and jewelry. Upon receiving the certificates of indeterminable value from the trustee, he immediately transferred the certificates into another alleged trust, thus apparently leaving him with nothing. As the alleged trusts were also irrevocable, Temple maintains that he is without assets to be distributed. Chisum and Temple claim that Chisum was required to authorize any withdrawals from the trust accounts.[5]
 {¶ 5} The parties presented differing positions as to the extent of their involvement in creating and managing the trusts. Catherine argued that she had no true involvement in the trusts. Temple argued that at times Catherine held fiduciary positions with the trusts. In 2001, the United States Tax Court found Temple's trusts to be fraudulent attempts to conceal his assets.Robert M. Temple v. Commissioner of Internal Revenue (Nov. 1, 2000), T.C. Memo 2000-337, Docket No. 23071-96.
 {¶ 6} In March 2000, Temple was arrested for domestic violence upon Catherine. Following the incident, Catherine and Robby moved out of the couple's residence, and Catherine filed a motion for temporary restraining order in the Trumbull County Court of Common Pleas. Thereafter, the couple reached an agreed order whereby visitation was scheduled for Temple while maintaining Catherine's interests in restraining Temple's contact with her. Catherine later moved to Lakewood.
 {¶ 7} On September 1, 2000, Catherine filed a complaint for divorce as well as a temporary restraining order ("TRO") against Temple. Catherine filed an additional TRO against Frank Bodor ("Bodor"), an attorney for Temple.[6] On January 21, 2001, after considerable motion practice, the court issued a judgment entry for support that established Temple's child support obligation to Catherine as well as his rights to visitation with Robby.
 {¶ 8} On or about May 17, 2001, and upon Temple's motion, the court appointed Elizabeth Stein ("Stein") guardian ad litem, and the matter was referred to Family Conciliation Services for an investigation and report. On June 27, 2001, Catherine filed a motion to disqualify Bodor from representing Temple because of previous representation he gave to both Temple and Catherine. On August 1, 2001, after conducting a hearing, the court granted Catherine's motion to disqualify Bodor.
 {¶ 9} On October 23, 2001, Catherine filed a motion for immediate inspection of real estate. On October 29, 2001, Temple and Chisum were held in contempt of court, without hearing, for failing to produce copies of the trust documents. Temple and Chisum appealed, and this court reversed the orders of the trial court in order for the court to conduct a hearing.[7] On April 23, 2002, Stein filed an ex parte motion to suspend Temple's visitation with Robby. On April 24, 2002, the motion was granted. On April 29, 2002, Temple filed a motion to vacate.[8]
 {¶ 10} On March 31, 2003, the divorce proceeding finally began. Following numerous continuances and recesses, the case concluded on June 30, 2003, and the parties filed written closing arguments, findings of fact, and conclusions of law. On October 10, 2003, the trial court issued a 47-page opinion awarding a divorce to Catherine, addressing property division, and allocating parental rights and responsibilities.
 {¶ 11} On November 10, 2003, Temple timely appealed and this matter was consolidated with case number 83797.[9] Temple advances eight assignments of error for our review. Chisum advances ten assignments of error for our review. We elect to address Temple's assignments of error first.[10]
 I. {¶ 12} In his first assignment of error, Temple argues that "the trial court erred in granting [him] far less than the standard visitation with the parties['] minor child." We disagree.
 {¶ 13} Initially, Temple argues that the trial court erred by failing to conduct a hearing on Stein's motion to suspend visitation. At the time, the court concluded that "visitation with father be suspended immediately, until such time as appropriate arrangements for visitation with father are presented and approved by the Court." Temple argues that as a result of the court's decision, and subsequent refusal to rule upon Temple's motion to vacate, his relationship with his son has become "nonexistent."
 {¶ 14} Although the court arguably should have conducted a hearing prior to granting the guardian ad litem's motion, the error became harmless following the divorce trial and journal entry awarding limited visitation to Temple. The question for this court, and the specific issue to which Temple appeals, is whether the trial court's granting of this limited visitation was proper. Following the divorce proceedings, submission of arguments, findings of fact and conclusions of law, the court found that Temple is to receive visitation with Robby two days per month, from Saturday at 10:00 a.m. until Sunday at 7:00 p.m. It is from this decree that Temple advances his primary arguments.
 {¶ 15} R.C. 3109.051(F)(2) sets forth the visitation guidelines. This section also permits the trial court to deviate from these guidelines based on factors provided in R.C.3109.051(D). Having reviewed the record, we find that the court properly considered R.C. 3109.051(D) in deviating from the standard visitation guidelines. We review the trial court's decision under an abuse of discretion standard.[11] Pisaniv. Pisani (Jan. 27, 2000), Cuyahoga App. No. 76980.
 {¶ 16} The court considered the respective relationships Robby had with each parent, finding he has a healthy relationship with Catherine, while his relationship with Temple is "strained." The record indicates that Temple was often angry and would yell at Robby and kick the family dogs. Robby would ask Catherine not to tell Temple about school events. Further, Catherine testified that Robby would have nightmares after returning from visits with Temple, his fingernails would be chewed down, and he would pick wounds on his extremities until they were raw. These episodes would eventually subside, only to return upon Robby's next visit with Temple.
 {¶ 17} The court also found that Temple created a risk to Robby's safety and welfare. In 2002, Robby reported to his mother and Stein that Temple had fallen asleep at the wheel of his car and drifted into an adjoining lane, forcing another car off of the road.[12] Robby had to yell at his father to wake him up.
 {¶ 18} The court also considered the distance between Temple and Robby. Temple lived approximately 70 miles away from his son. The court found it unreasonable for Robby to have to make this trip during the week. The court reasoned that such a trip is unreasonable considering the amount of extracurricular activities Robby is involved in at school.
 {¶ 19} We find the trial court did not abuse its discretion by deviating from the standard visitation guidelines.[13]
Temple's first assignment of error is overruled.
 II. {¶ 20} In his second assignment of error, Temple argues that "the trial court abused it[s] discretion in imputing income to [him] despite the fact that he did not change his income or source of employment for the last ten years." We disagree.
 {¶ 21} The calculation of child support is governed by R.C.3113.215. A trial court may impute income to an individual if it determines that the person is voluntarily unemployed or voluntarily underemployed. R.C. 3113.215(A)(5). Once the trial court elects to impute income, it must consider the factors set forth in R.C. 3119.01(C)(11). These factors include, but are not limited to: the parent's prior employment; education; special skills and training; age and special needs of the child; the parent's increased earning capacity because of experience; and any other relevant factors. Absent an abuse of discretion, the trial court's determination will not be overturned.
 {¶ 22} Temple argues that the court erred by finding he was underemployed and by failing to consider the lack of prevailing job opportunities and salary levels in the community in which he lives. He argues that he has not changed his position in the last ten years, and that both he and Catherine testified that they never made much money maintaining the couple's properties.
 {¶ 23} Catherine argues that the court considered the requisite factors and properly found Temple to be underemployed. Specifically, the court found Temple's health does not prevent him from working full time and that Temple has worked as a veterinarian and curator of mammals at the Columbus Zoo; veterinarian for Sea World in Florida; performed contract service for Sea World in Ohio; and practiced privately in Ohio. Also, the court noted that his Ohio veterinary license is currently in good standing. When presented with various publications listing full-time veterinarian positions in the area, Temple maintained that he had no interest in working at such places. He has not filed a tax return since 1987, even though he admits having more than $50,000 in a bank account from March 2000 to the present. Also, the court found the "trusts" to which Temple associates all of his prior assets to be a sham in order to avoid taxation.[14] From the foregoing, the court found that Temple could earn $72,800 as a full-time veterinarian. From this, the court ordered Temple to pay $780.32 per month, plus 2-percent processing charge, as and for child support.[15]
 {¶ 24} Having reviewed the record, we find that the court did not abuse its discretion. Appellant's second assignment of error is overruled.
 III. {¶ 25} In his third assignment of error, Temple argues that "the trial court erred by calling the trusts created by the parties a `sham' simply due to a tax court ruling." We find Temple's argument is without merit.
 {¶ 26} Regarding the trusts, Temple claims he transferred all of his worldly possessions into them and that Chisum,[16]
who served as trustee of the alleged trusts while residing in Arizona, had control of the trust assets, all of which remained in Ohio. Temple and Chisum stated that all of Temple's income was deposited into the trusts' bank accounts located in Arizona and that Chisum was required to authorize any withdrawals from those accounts.[17] However, testimony indicated that Temple and Catherine each had a signature stamp in his or her possession which gave each the authorization to withdraw funds. Temple argues that such authorization by the stamp could only be used with Chisum's written permission.
 {¶ 27} In finding that the trusts were a sham, the trial court relied upon the United States Tax Court decision which found Temple's trusts to be fraudulent attempts to conceal his assets and that he, in fact, maintained control over the assets said to be held in trust. Temple argues that the trial court's reliance on the tax court ruling was inappropriate because the Sixth Circuit Court of Appeals held, while upholding the tax court's ruling, that the tax court decision did not affect the validity of the trusts.[18] The Sixth Circuit held that "* * * under established tax law, the income which Temple had attempted to assign to the trusts * * * was, nevertheless, for income tax purposes attributable to him." Id. at ¶ 2. Temple concludes that the trial court was obligated to perform an independent examination of the validity, as well as the interests of the parties in the trusts. We agree and find that the court did conduct such an examination.
 {¶ 28} Temple is correct that the Sixth Circuit Court of Appeals possession and control over all of the alleged trust properties and chattels. held that the tax court judgment "* * * does not in any way affect the legal rights and obligations of the trusts or the relationship between Temple and the trusts." Id. However, the court continued, finding that "the evidence in the record, notably not including the trust documents, is inconclusive as to the legal existence of the trusts." The absence of any evidence continues in the case sub judice.
 {¶ 29} The burden of proving the existence of a trust rests on the person asserting it. Gammarino v. Hamilton Cty. Bd. ofRevision (1998), 84 Ohio St.3d 155. Temple failed to produce either the underlying trust documents or other indicia of their existence. Although the trial court may have been incorrect in finding that "the alleged trusts are a sham as a matter of law" based on the tax court decision alone, the court conducted its own examination of Temple's claims and discerned that the trusts do not exist. The court questioned Temple, initially asking whether Temple received anything in return for placing his assets in these trusts. Although Temple did receive certificates, he relinquished them into another trust. The court continued:
{¶ 30} "Court: What would possess you to do that?
 {¶ 31} "Temple: For asset protection.
 {¶ 32} "Court: Well, you don't have any assets to protect; yougave them away?
 {¶ 33} "Temple: Well, they are protected as far as the IRS wasconcerned.
 {¶ 34} "Court: They are protected from you.
 {¶ 35} "Temple: If that's what the trustee decided to do.
 {¶ 36} "Court: `Rather than pay my ex-brother-in-law 20,000, Iam going to give away a 500,000 farm?'"[19]
 {¶ 37} The court further found that no evidence was provided as to whom the beneficiaries are under the trusts; the couple was able to withdraw money from the trusts; and Temple maintained physical possession of all tangible property associated with the trust.
 {¶ 38} We find that the court did not err in finding that independent of the tax court's ruling, the assets purported to be in trust were, in fact, readily accessible assets in the possession and control of Temple and, therefore, were not protected by the alleged trusts.
 {¶ 39} Temple's third assignment of error is overruled.
 IV. {¶ 40} In his fourth assignment of error, Temple argues that "the trial court erred by ignoring the trusts created by the parties when determining the `marital' nature of the property." We disagree.
 {¶ 41} Contrary to Temple's argument that the trial court invalidated for purposes of ownership the trusts that were created in 1985, we find that the trial court simply determined that Temple failed to establish that the assets contained in the alleged trusts were not marital property. Without proof of the establishment of the trusts, the court was correct to find the property marital.
 {¶ 42} Temple's fourth assignment of error is overruled.
 V. {¶ 43} In his fifth assignment of error, Temple argues that "the trial court erred in determining that none of the property testified and presented to the court was premarital and was the sole property of [Temple] and should not have been divided." We disagree once again.
 {¶ 44} In any divorce action, the starting point for a trial court's analysis is an equal division of marital assets. R.C.3105.171(C); Neville v. Neville, 99 Ohio St.3d 275,2003-Ohio-3624. However, R.C. 3105.171(C) clearly provides that where an equal division would be inequitable, a trial court may not divide the marital property equally but instead must divide it in the manner that the court determines to be equitable. Id. In order to determine what is equitable, a trial court must consider the factors set forth in R.C. 3105.171(F). Id.
 {¶ 45} "Appellate courts generally review the overall appropriateness of the trial court's property division in divorce proceedings under an abuse of discretion standard. * * * Furthermore, a trial court's property division should be viewed as a whole in determining whether it has achieved an equitable and fair division. The trier of fact, as opposed to the appellate court, is in a far better position to weigh the credibility of witnesses." Hess v. Riedel-Hess, 153 Ohio App.3d 337,2003-Ohio-3912.
 {¶ 46} Under certain circumstances, separate property may be converted to marital property when it is commingled with marital property. Cimperman v. Cimperman, Cuyahoga App. No. 80807, 2003-Ohio-869. The commingling of separate and marital property, however, does not destroy the character of the separate property unless its identity as separate property is not traceable. R.C.3105.171(A)(6)(b). The party seeking to have a particular asset classified as separate property has the burden of proof, by a preponderance of the evidence, to trace the asset to separate property. Cimperman, supra. "While the starting place for an equitable property division is an equal assignment of marital debt, after considering all the relevant factors in a case, a trial court may choose to award one party more of the marital debts and still have an equitable order." Id.
 {¶ 47} R.C. 3105.171(F) provides:
{¶ 48} "In making a division of marital property and indetermining whether to make and the amount of any distributiveaward under this section, the court shall consider all of thefollowing factors:
 {¶ 49} "(1) The duration of the marriage;
 {¶ 50} "(2) The assets and liabilities of the spouses;
 {¶ 51} "(3) The desirability of awarding the family home, orthe right to reside in the family home for reasonable periods oftime, to the spouse with custody of the children of the marriage;
 {¶ 52} "(4) The liquidity of the property to be distributed;
 {¶ 53} "(5) The economic desirability of retaining intact anasset or an interest in an asset;
 {¶ 54} "(6) The tax consequences of the property division uponthe respective awards to be made to each spouse;
 {¶ 55} "(7) The costs of sale, if it is necessary that anasset be sold to effectuate an equitable distribution ofproperty;
 {¶ 56} "(8) Any division or disbursement of property made in aseparation agreement that was voluntarily entered into by thespouses;
 {¶ 57} "(9) Any other factor that the court expressly finds tobe relevant and equitable."
 {¶ 58} Temple argues the evidence at trial established that certain property was premarital, to wit, four parcels of land that were purchased prior to the marriage and certain paintings that were in his possession prior to the marriage. Catherine argues that this property became marital property based on actions during the marriage. We agree with Catherine.
 {¶ 59} While Temple may have owned the parcels of land prior to the marriage, both he and Catherine worked to maintain the condition of the properties and created a business thereon. Likewise, while the paintings may have been brought into the marriage by Temple, there is nothing to suggest these paintings were kept separate from the home or otherwise maintained an independent existence from the rest of the couple's property. The court considered the factors listed in R.C. 3105.171, and we find nothing in the record to suggest the court abused its discretion in dividing the property.
 {¶ 60} Temple's fifth assignment of error is overruled.
 VI. {¶ 61} In his sixth assignment of error, Temple argues that "the trial court abuse[d] its discretion and ignored the evidence in this matter in determining that [he] acted alone in the creation and management of the various trusts." This assignment of error is without merit.
 {¶ 62} Whether or not Temple acted alone in the creation of the trusts bears no impact on the distribution of the property allegedly contained in them. Assuming arguendo we agree with Temple that Catherine was involved, Temple has failed to request any relief from such a finding.
 {¶ 63} Temple's sixth assignment of error is overruled.
 VII. {¶ 64} In his seventh assignment of error, Temple argues that the "finding of contempt against [him] was improper as he had stated on numerous occasions that he did not have any of the records requested." We disagree.
 {¶ 65} A person charged with contempt for violation of a court order may defend by proving it was not in his power to obey the order. Pugh v. Pugh (1984), 15 Ohio St.3d 136, 140. The party seeking to establish the defense of impossibility bears the burden of satisfying the court that his failure to obey was due to an inability to render obedience. Offenberg v. Offenberg,
Cuyahoga App. Nos. 78885, 78886, 79425, and 79426, 2003-Ohio-269. A judge's ruling of contempt will not be disturbed on appeal absent an abuse of discretion. Id.
 {¶ 66} In the case sub judice, Catherine propounded a request for production of documents upon Temple. This request went unanswered. Catherine then filed a motion to compel which was granted, but the documents were still not produced. Temple argues that the documents requested were not in his possession and, therefore, he was unable to comply with the discovery request. Temple maintained the position that he was not entitled to any information regarding the trust, as he held no ownership therein. In order to facilitate review of the alleged trust document, the court issued an order appointing an independent person to review the trust documents and determine the value of the assets owned by the trust. Temple was ordered to pay up to $3,000 and Chisum was ordered to advance these funds to him. Neither party complied with this order nor did they contest the order itself.
 {¶ 67} We find the trial court did not abuse its discretion in holding Temple in contempt. Temple may not attempt to avoid the distribution of assets by hiding behind alleged trusts and then pretend the alleged documents are not under his control.
 {¶ 68} Temple's seventh assignment of error is overruled.
 VIII. {¶ 69} In his eighth and final assignment of error, Temple argues that "the trial court erred in ordering [him] to pay Catherine Temple's legal bills." We disagree.
 {¶ 70} It is within the sound discretion of the trial court to award attorney's fees in a divorce action. Schafer v.Schafer, Lucas App. No. L-00-1255, 2002-Ohio-129. A decision to award attorney's fees will be reversed only upon a showing of an abuse of discretion. Id. R.C. 3105.18(H) provides, in material part: "In divorce or legal separation proceedings, the court may award reasonable attorney's fees to either party at any stage of the proceedings, including, but not limited to, any appeal * * * if it determines that the other party has the ability to pay the attorney's fees that the court awards. When the court determines whether to award reasonable attorney's fees to any party pursuant to this division, it shall determine whether either party will be prevented from fully litigating his rights and adequately protecting his interests if it does not award reasonable attorney's fees."
 {¶ 71} In the case sub judice, the court considered the extraordinary issues in this case, including searching to establish the alleged trusts and ownership of assets and incomes. Further, there were collateral proceedings in federal and state courts.[20] Also, the court found that "[a]bsent an award of attorney fees, [Catherine] would be prevented from fully litigating her rights and adequately protecting her interests." Regarding Temple's ability to pay, the court found that Temple's 400 acres of real estate was valued at more than $500,000 and that he has sold items allegedly contained in the trusts to finance cross-country trips. Therefore, his claims of insolvency are baseless.
 {¶ 72} The trial court did not abuse its discretion in awarding attorney fees to Catherine. Temple's eighth assignment of error is overruled.
 IX. {¶ 73} Defendant-appellant James C. Chisum ("Chisum"), pro se, argues that the trial court erred by improperly holding him in contempt and sentencing him to a 30-day jail sentence. We find no error.
 {¶ 74} Chisum argues that he "simply did not disobey any order" and contends that every document subject to the discovery requests was submitted. Chief among Chisum's allegations is that the trial court repeatedly:
{¶ 75} "* * * [excluded] all evidence from defendant/appellant* * * [accepted] uncertain hearsay and statements by appelleecouncil [sic] as evidence from appellee, [practiced] law from thebench in aid to the plaintiff, [extorted] breech [sic] ofcontract obligations through menace and the threat of more jailtime, * * * and [aided] the plaintiff through fifth amendmentinstruction while demanding answers of appellant * * *."
 {¶ 76} Chisum found these "errors" to be an "abuse of discretion, simple error, compounded error and judicial misconduct, perhaps even judicial tyranny."
 {¶ 77} Chisum further argues the trial court "adopted the whims [sic] desires [sic] and thoughts of appellee council [sic] above sworn testimony at every turn." Moreover, Chisum argues the trial court "* * * summarily without evidence or jurisdiction repeatedly extorted, coerced and cojoled [sic] appellant into violations or breeches [sic] of ethics and obligations of contracts" and acted "* * * apparently with forethought and planning for malice."[21] Such meritless drama and empty characterizations will not be tolerated by this court.
 {¶ 78} Chisum shall note that in Ohio pro se litigants are bound by the same rules and procedures as those litigants who retain counsel. They are not to be accorded greater rights and must accept the results of their own mistakes and errors.Tisdale v. Javitch, Block Rathbone, Cuyahoga App. No. 83119, 2003-Ohio-6883. "Although the judicial system affords great leeway to pro se litigants in presenting their arguments to the court, those same pro se litigants are to conduct themselves with the same sense of decorum and common courtesy expected of licensed attorneys." State v. Richard, Cuyahoga App. No. 82247, 2003-Ohio-5921.
 {¶ 79} In this case, Chisum was aware the alleged trust documents were requested by counsel and the court, but failed to present them without delay or excuse. Chisum should have been aware that failure to comply with court orders may result in a finding of contempt. In fact, at one point Chisum acknowledged his understanding of contempt. The court asked Chisum two questions: "Do you understand that failing to abide by that order will put you in direct contempt * * *?" and "Do you understand that if this court determines that you are in direct contempt, I can sentence you to jail until you comply with my order; do you understand that?" Chisum twice replied, "Yes." We find no error in the court's order of contempt or sentence.[22]
 {¶ 80} Chisum is hereby placed on notice that the undocumented allegations he has spewed upon this court through his appellate brief will not, under any circumstances, be tolerated in the future. Chisum's brief is mean spirited, unprofessional, childish, and rude. There is no place for such filings, pro se or not, in this or any other court of law.[23]
 {¶ 81} Chisum's first assignment of error is overruled.
 X. {¶ 82} Chisum's second assignment of error, simply entitled "`Sham Trust' treatment of Appellant `Obligations of Contract,'" is also overruled.[24] As stated above, the court conducted its own examination of Temple's claims and discerned that the trusts do not exist. In addition to the reasons set forth in section III of this opinion, the court inquired about the trusts with Chisum. The court asked: "And you don't know the beneficiary of the trust that you are the trustee of, and you don't know who those beneficiaries are; is that your testimony?" Chisum replied: "I have no firsthand knowledge, and it would be improper for me to testify on hearsay." One question later, Chisum testified that the beneficiary named on the trust in question was a foreign trust.
 {¶ 83} Following a mentally exhaustive dialogue with Chisum, the court established that a copy of the trust was located in the cabin where Chisum was staying. The court took a recess and ordered Chisum to "* * * go back out to your log cabin and * * * bring that document back to this courthouse * * *. Now, at that point we will have an in camera inspection of that, and I will make sure that the only thing that is divulged is who the foreign trustee is. * * * Do you understand the instruction that I have given." Chisum responded, "Yes." Upon returning to the court, Chisum failed to produce the alleged trust, instead claiming the order given by the court was inapplicable to the documents that he allegedly had in his possession. Chisum's strained logic is not worthy of recitation.
 {¶ 84} The trial court is not required to produce the discovery which one party seeks to rely. The burden of production is on the parties. In this case, the court took the unusual step of allowing Chisum one last opportunity to present the documents he failed to produce for three years. For Chisum to now argue the court failed to conduct an in camera inspection is pure folly. The blame rests with Chisum and Temple, not the court.
 {¶ 85} Chisum's second assignment of error is overruled.
 XI. {¶ 86} Chisum's third, fourth, fifth, sixth, seventh, and ninth assignments of error are overruled as they lack any substance in law or fact.
 XII. {¶ 87} Chisum's eighth assignment of error is overruled.[25] Judgment affirmed.
It is ordered that appellee recovers of appellants her costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas, Domestic Relations Division, to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Blackmon, P.J., and Karpinski, J., Concur.
[1] Cuyahoga App. No. 83758.
[2] Cuyahoga App. No. 83797.
[3] Although the parties testified that they held a religious ceremony, they never obtained a marriage license. Catherine claimed in her complaint that a common-law marriage existed between the couple.
[4] The trusts were entitled "Black Creek Management," "Nassau Life Insurance Co. Limited," "Hanlish Foley LLC," "Trundle Management," "Galingale Group," and "Old Laborador Investment Co."
[5] There is no evidence that Temple's requests for withdrawals were ever questioned or rejected by Chisum. Chisum resides in Arizona. By his own account, Chisum does not report his income to the Internal Revenue Service, have a social security number, or own a driver's license. Like Temple, he claims his property belongs to one or more trusts.
[6] Bodor was later dismissed from the lawsuit.
[7] Cuyahoga App. Nos. 80455 and 80456, 2002-Ohio-5835.
[8] The trial court never ruled on the motion.
[9] Temple v. Temple, et al. (2004), Cuyahoga App. No. 83797.
[10] Our discussion of Chisum's assignments of error begins in section IX of this opinion, page 22.
[11] Abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. Stuffleben v. Cowden, Cuyahoga App. No. 82537, 2003-Ohio-6334.
[12] Temple claimed this episode was caused by a heart condition, but no evidence was submitted to substantiate the claim.
[13] An additional fact we find persuasive is that Catherine requested that she be designated residential parent and legal custodian of Robby. Temple made no such request.
[14] This will be discussed at greater length in section III of this opinion.
[15] Temple never produced discovery in regard to his income.
[16] Our discussion of Chisum takes place later in this opinion.
[17] As stated earlier in this opinion, there is no indication that Chisum ever rejected, or even questioned, Temple's request for a withdrawal of funds. Further, Temple maintained.
[18] Temple v. Commissioner of Internal Revenue (Apr. 4, 2003), 65 Fed.Appx. 605.
[19] Besides the avoidance of paying federal taxes, another reason given by Temple for the trusts was to prevent his former brother-in-law from collecting a $20,000 judgment against him.
[20] These include the tax case against Temple and the affidavits of prejudice filed by Temple and Chisum with the United States District Court.
[21] This is a mere sampling of Chisum's allegations.
[22] The court's order provided that the contempt order would be purged if Temple and Chisum performed 200 hours of community service.
[23]Chisum has also filed 42 U.S.C. 1983 claims against the trial court in the United States District Court of the Northern District of Ohio. See Chisum v. Celebrezze (Aug. 29, 2002), N.D. Ohio Case No. 1:02 CV 1292 (Matia, J.) (case summarily dismissed). Chisum filed suit again in 2003. See Temple v.Celebrezze (June 2, 2003), N.D. Ohio Case No. 4:03 CV 689 (Economus, J.) (case summarily dismissed).
[24] See also sections III and IV of this opinion.
[25] See section V of this opinion.